No. 19,053.

THE FIRST NATIONAL BANK OF HAYS CITY, *Appellant*, v. A. O. ROBINSON and H. W. CHITTENDEN, *Appellees*.

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Testimony of Owner as to Ownership—Conclusions*. A party claiming title to a chose in action or other personal property which is the subject of litigation may properly be permitted to answer a question as to who is its owner, and if his adversary desires the constituent facts on which such claim of ownership is based he may elicit them on cross-examination.

2. SAME. The modern notion of the admissibility of evidence is that it is more important to get the truth than to quibble over impractical distinctions between facts and conclusions.

3. PROMISSORY NOTE—*Indorsement—Verified Denial—Burden of Proof*. A petition in the usual form by the indorsee of a negotiable note bearing the purported indorsement of the payee "By J. D. M., ag't." was answered by a verified denial that such note was not sold and delivered by the payee company or any one for it with authority so to do. *Held*, that the burden of proof was upon the plaintiff to establish authority in the agent to make the indorsement.

Appeal from Ellis district court; JACOB C. RUPPEN-
THAL, judge. Opinion filed December 12, 1914. Af-
firmed.

*A. D. Gilkeson*, of Hays, for the appellant.

The opinion of the court was delivered by

WEST, J.: The plaintiff bank sued upon a promissory
note executed by the defendants to the Mid-Continent
Loan Company, December 2, 1911, for $250 payable
ninety days after date with six per cent interest, alleg-
ing that it purchased the note before maturity for value
in the regular course of business, and that it was trans-
ferred by indorsement "Mid-Continent Loan Company
by J. D. McInnes, Agt." The answer contained a gen-
eral denial, and averred that the note was secured with-
out consideration, and that the inducement for its exe-
cution was a false, fraudulent and untrue statement of
the loan company by its agent that it would make loans
in Ellis county and pay the defendants commissions
thereon, and that the company was to issue stock to
the defendants for the amount of the note, which was
not done; that the defendants received no considera-
tion; also a denial that the note was ever sold and de-
livered to the plaintiff by the loan company or any one
for it with authority so to do. The answer was verified.
The trial resulted in a judgment for the defendants,
from which the plaintiff appeals.

Error is assigned upon the refusal of the court to
permit the cashier of the bank to testify who was the
owner of the note, and in refusing testimony offered
by the president as to a conversation had with McInnis
touching his authority as to when the note was pur-
chased, also in admitting the testimony offered by the
defense.

The jury were instructed that the burden was upon
the plaintiff to show that it was the owner of the note

for value before maturity; that it was duly indorsed to the plaintiff by the loan company or some one authorized thereby; and it is argued that if the plaintiff established the fact that the note was purchased for value before maturity in due course the question of indorsement is out of the case.

Complaint is also made of an instruction that as the defendants had by verified answer denied that the plaintiff was the legal owner or holder of the note it was necessary that plaintiff prove the indorsement of the original payee. It is suggested that a mere denial, without proof in support thereof, is insufficient to place this burden upon the plaintiff. The defendants have furnished no brief, and we are compelled to consider the case without the benefit of any suggestion from them.

The cashier was asked who was the holder of the note, and an objection on the ground that the question called for a conclusion of the witness was sustained. A similar ruling was made touching questions as to who was the owner and whether the note was a part of the assets of the plaintiff bank, but finally the latter question was permitted to be answered. The modern notion of the admissibility of evidence is that it is more important to get the truth than to quibble over impractical distinctions. While in a very strict sense it may be giving a conclusion for the owner to say that he is the owner of a chattel or chose in action, surely he ought to know, and if he is mistaken it may be shown on cross-examination. Almost any answer might, when dissected with the scalpel of precise mental philosophy, be deemed wholly or partly a conclusion. The first stock question usually is, "Where do you reside?" and the courts have not yet found that a reply giving the location indicates only the witness's conclusion as to his habitation, and yet no more preplexing question can arise than that of residence in some cases. In *Simpson v. Smith & Barnes*, 27 Kan. 565, the owner-

ship of real and personal property was the main question, and a witness was permitted to testify that the plaintiffs were "the absolute owners." This was held error, but whether material error or not was left undecided. In *Solomon Rld. Co. v. Jones*, 34 Kan. 443, 8 Pac. 730, a question was permitted to be asked as to whose employ the plaintiff was in at the time of the injury, and it was held that as the witness in addition to the direct answer narrated in detail all the facts and circumstances connected with his employment, the error was not material, and that if the question had been merely preliminary it would not. have been erroneous. In *Hite v. Stimmell*, 45 Kan. 469, 25 Pac. 852, it was held incompetent for a witness to state that he thought the cattle in question belonged to another party, *Simpson v. Smith & Barnes*, supra, being quoted from and followed. In *Sparks v. Bank*, 68 Kan. 148, 74 Pac. 619, *Hite v. Stimmell*, supra, and *Solomon Rld. Co. v. Jones*, supra, were followed. In *The State v. Rennaker*, 75 Kan. 685, 90 Pac. 245, the question whether an answer that the witness had purchased intoxicating liquors from the defendant amounted to a conclusion was left undecided, and in *McDonald v. Daniels*, 76 Kan. 388, 92 Pac. 51, a direct statement by the witness that she owned property in controversy was held not to be prejudicial error, as it was followed by examination and cross-examination giving in detail the circumstances of her purchase and manner of acquiring the property. The supreme court of Alabama has twice held that ownership of personal property is a fact to which a witness may testify and may on cross-examination be required to state facts on which the claim of ownership rests. (*Steiner Bros. & Co. v. Tranum*, 98 Ala. 315, 13 South. 365; *Hunnicutt v. Higginbotham*, 138 Ala. 472, 35 South. 469, 100 Am. St. Rep. 45.) The supreme court of Iowa held that a statement by a witness that certain property in controversy belongs to him is not inadmissible as a conclusion since the

question calls for a fact as well as an opinion. (*Murphy v. Olberding,* 107 Iowa, 547, 78 N. W. 205, and cases cited.) In New York it has been repeatedly held that such a question is competent. In *DeWolf v. Williams,* 69 N. Y. 621, it was said that the title to property is ordinarily a simple fact of which witnesses having a requisite knowledge can testify to directly. This was followed in *Pichler v. Reese,* 171 N. Y. 577, 64 N. E. 441. Wharton, in his work on the Law of Evidence, says that ordinarily a witness can not be asked as to a conclusion of law and that sometimes this has been so far pressed as to involve the assumption that he can not be asked as to conclusions of fact, but that "the error of this assumption will be seen when we remember that there are few statements of fact that are not conclusions of fact." (1 Wharton, Law of Ev., § 507.) In another section the author states that an inference necessarily involving certain facts may be stated without the facts, but when the facts are not necessarily involved in the inference then they must be stated. "In other words, when the opinion is the mere short-hand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based." (§ 510.) In volume 1 of Greenleaf on Evidence, 16th ed., § 441, the author of that work, after discussing the rule as to facts and conclusions, says:

"The absurdities which disfigure the application of the rule come chiefly from a too illiberal interpretation of the latter notion; . . . A more liberal tendency in this respect seems to be making its way in recent times; but the reports are overloaded with decisions of the sort that ought never even to have been called for; and a prominent feature in the application of the rule is the petty and unprofitable quibbling to which it gives rise."

In answer to the objection that the witness must not usurp the functions of the jury, he says:

"The answer is simply that he is not attempting to usurp them—not attempting to decide the issue and

thus usurp their place, but merely to give evidence, which they may or may not accept, as they please." (§ 441*b*.)

The fact that the opinion is on the very issue before the jury would seem, he says, to be a very good reason for its admission.    In discussing this subject, Wigmore, in his work on Evidence, vol. 3, § 1960, says:

"If a witness, in the course of his testimony, comes to mention that A 'possessed' or B 'owned' or C was 'agent,' let him not be made dumb under the law, and be compelled by evasions and circumlocutions to attain the simple object of expressing his natural thought.    If there is a real dispute as to the net effect of the facts, these may be brought out in detail on cross-examination."

The sense and reason of the matter as well as the authorities cited impel to the conclusion that it would have been proper to permit officers of the bank to state on their examination in chief who was the owner and holder of the note.    No criticism whatever of the ruling is imputed or implied, for the trial court's decision was not in conflict with previous holdings of this court. No prejudice resulted in this case, as later the circumstances under which the bank took the note were quite fully shown, and the note itself was introduced in evidence.

No error appears in receiving evidence of statements made by the assumed agent, nor in admitting testimony offered by the defendants.

While numerous errors are urged regarding the instructions, it is not necessary to consider them, because of a fatal defect in the plaintiff's proof which precluded a recovery in any event.    There was no way to pass title by indorsement, unless the agent who attempted so to do was thereunto authorized.    (3 R. C. L. p. 1101; *Sparks v. The Dispatch Trans. Co.,* 104 Mo. 531, 15 S. W. 417, 12 L. R. A. 714, 24 Am. St. Rep. 315.) There is no evidence of such authority except certain statements made by him, which of course were not

sufficient. (*Fence-machine Co. v. Highleyman,* 71 Kan. 347, 80 Pac. 568.) There is some evidence that he had authority to take notes for the company, but none that he was empowered to negotiate them.

Section 30 of the negotiable instruments act provides that:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." (Gen. Stat. 1909, § 5276.)

True, section 66 (Gen. Stat. 1909, § 5312) provides that every holder is deemed *prima facie* to be a holder in due course until it is shown that the title of the person who negotiated it was defective, but section 59 (Gen. Stat. 1909, § 5305) defines a holder in due course as one who took it in good faith and for value and who at the time it was negotiated to him had no notice of any defect in the title of the person negotiating it. It is naturally and logically urged that lack of authority or defective title can not be shown by a mere verified denial, but only by evidence. Ordinarily this may be true, but the civil code (§ 110) expressly provides that allegations of the execution of written instruments and indorsements thereon shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney. Such verified denial is held to put in issue the execution of such instrument or indorsement, and as a matter of practice places on the plaintiff the burden of proving such indorsement. (*Threshing Machine Co. v. Peterson,* 51 Kan. 713, 33 Pac. 470; *Kurth v. Bank,* 77 Kan. 475, 94 Pac. 798, 15 L. R. A., n. s., 612; *White v. Smith,* 79 Kan. 96, 101, 98 Pac. 766.)

The court instructed that the burden of proof was upon the plaintiff to show that it was the owner of the note and gave value for it before maturity, and that the "note was duly indorsed to the plaintiff by the Mid-Continental Loan Company, or by some one duly and properly authorized by said company to transfer, sell and endorse the note in question to the plaintiff." The quoted portion correctly stated the law and, regardless of any other alleged errors in the charge, the jury could not find for the plaintiff without proof of the agent's authority.

The judgment is affirmed.