No. 21,763.

THE STATE OF KANSAS, ex rel. CECIL BROWN, *Appellee*, v. PAUL LYONS, *Appellant*.

SYLLABUS BY THE COURT.

1. ILLEGITIMATE CHILDREN—*Period of Gestation—Instructions*. On the facts stated in the opinion, *held*, in a bastardy proceeding, it was not error to refuse instructions that the period of gestation is 280 days; that the intercourse must have occurred on a certain date; that if defendant had shown by a preponderance of the evidence he was somewhere else on the date fixed by the relatrix, then the verdict must be in his favor; and that if the jury should find the evidence equally balanced upon the question as to whether he was the father of the child, they should find in his favor.

2. SAME—*Opportunity to Show Ulterior Motive of Relatrix*. The record fails to sustain the contention that defendant was denied an opportunity to show an ulterior motive actuating the relatrix in charging him with being the father of her child.

The State, *ex rel.*, v. Lyons.

3. SAME—*Resemblance of Child to Defendant—Closing Argument of Counsel.* In a bastardy proceeding where the child was three and a half months old at the time of the trial, *held* (following *The State, ex rel., v. Browning,* 96 Kan. 540, 152 Pac. 672), that there was no error in refusing an instruction that the appearance and resemblance of the child to the defendant should not be considered in determining its paternity; and *further,* that defendant was not prejudiced by failure to sustain an objection to certain remarks made by counsel for the state in the closing argument, with respect to the resemblance between the child and defendant.

4. SAME—*Minor Defendant — Guardian ad Litem.* The defendant in a bastardy proceeding, who was under seventeen years of age at the time of the trial, made no request for the appointment of a guardian *ad litem.* He was represented by able counsel, and his parents, who were present in court. *Held,* that the record discloses no error in failing to appoint a guardian *ad litem.*

5. STATUTE—*Extending Period of Minority of Females—Not Retroactive.* Chapter 184 of the Laws of 1917, extending "the period of minority . . . in males and females to the age of twenty-one years," did not change the status of one who had already reached the age of majority under the former law. (*Smith v. Smith,* ante, p. 629, 180 Pac. 231.)

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed May 10, 1919. Affirmed.

*Ord. Clingman,* of Lawrence, and *Fred Robertson,* of Kansas City, for the appellant.

*S. M. Brewster,* attorney-general, and *J. B. Wilson,* county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this proceeding the appellant was adjudged to be the father of a bastard child and required to give bond for the payment of $1,200 towards the infant's support.

On July 29, 1917, when the child was born, the mother, Cecil Brown, was nineteen years old and unmarried. She was a high-school graduate and had attended Kansas University two years. On August 7, 1917, she swore to the complaint charging appellant, Paul Lyons, a boy sixteen years old and still in high school, with being the father of her child. When the trial occurred, on November 15, 1917, the complaining witness lacked but a few days of being twenty years old; she is

said to be of prepossessing appearance, and from her testimony it is apparent she is of more than ordinary intelligence and education. Aside from the disparity between her age and that of the appellant, and the fact that she admitted upon the trial to having had intercourse with another person, a brother of the appellant (whether younger than he does not appear), the case presents no unusual features, and depends for the most part upon questions of fact which have been found by a jury. We must assume that the unusual features to which we have referred were fully considered by the jury in determining the truthfulness of the story told by the complaining witness, and that the judge of the trial court, who saw and heard the witnesses on both sides, gave due weight to all the facts and circumstances of the case, in refusing appellant a new trial. The purpose of the proceeding is to provide support for the child. The law and the courts are not concerned with the question as to which of the parents was seduced. The conflict in the evidence has been determined by the jury and the court, and unless the appellant shows error in the proceedings, the judgment must be affirmed.

Miss Brown testified that the intercourse, which resulted in the birth of the child, occurred about eight or nine o'clock on a Sunday night in the latter part of October, 1916, on the roadside about a half mile west of No. 6 schoolhouse, and that neither she nor her parents were aware of her condition until her confinement. It was shown by her testimony and that of the attending physician that the child was fully developed. At the preliminary examination, Miss Brown testified that the second intercourse with the boy occurred in the stone quarry west of the university some time in the winter, and she thought it was in the month of January, 1917; that it occurred about 4 o'clock in the afternoon, on her way home from the university. At the trial, she testified to having had intercourse with him more than once in October and November, 1916. She lived half a mile from appellant's home; she had known him and the family about seven years. While there was testimony from herself and her parents that Paul Lyons came to her home and took her out riding on two occasions in the fall of 1916, the evidence does not show that the two were often in company, or appeared together in social gatherings. She ad-

mitted on cross-examination that she had never spoken to him about marriage.

The appellant did not testify. A number of witnesses called in his behalf testified that on each of the five Sunday evenings in October, 1916, he attended a series of lectures given at a church in Lawrence, which began at 7:30 and lasted until 9 o'clock, and that he was present all the time during each lecture.

Complaint is made of the refusal to give eight instructions requested. Most of these were quite fully covered by the instructions given. The court refused to give an instruction that the standard period of gestation is 40 weeks, or 280 days. In *The State, ex rel., v. Stout,* 101 Kan. 600, 168 Pac. 853, it was held that an instruction in respect to this matter might have been given, but that it was not error to refuse it. The instruction as requested in this case would have been contrary to the only medical testimony offered, which was that of the attending physician, who testified that the period varies from 270 to 290 days; besides, if the court had given a proper instruction on the subject, it would not have told the jury anything they did not already know. We think the court was right in refusing to instruct that the intercourse which resulted in the birth must have occurred on October 22, 1916. The state's testimony was that the intercourse occurred some time in the latter part of October, on a Sunday evening, while the witness stated that she thought it was probably October 22. Her entire testimony with respect to her relations with the appellant was properly left to the jury; and it was likewise for the jury to consider any conflict shown between her testimony at the trial and that given by her at the preliminary hearing. For the same reason, an instruction to the effect that if appellant had shown by a preponderance of the evidence he was at another place upon the date fixed by the relatrix, then the verdict must be in his favor, was properly refused. In the Stout case, *supra*, the same defense was relied upon, and it was held that, while an instruction upon the evidence respecting an alibi would not have been improper, it was not error to refuse to single out that feature of the defense. Besides, the instruction asked for by the appellant in this case was too broad.

Instruction No. 6, to the effect that if the jury should find the evidence equally balanced upon the question as to whether the appellant was the father of the child, they should find in his favor, was rightly refused. The court gave the usual instructions with respect to the burden of proof, the preponderance of evidence, and the duty of the jury in weighing and giving effect to the testimony of each witness.

The record does not sustain the contention that appellant was denied an opportunity to show an ulterior motive actuating the relatrix in having him arrested and charging him with being the father of her child. On cross-examination Miss Brown testified that she knew the father of Paul Lyons, and knew that Mr. Lyons had been farming and selling engines. The court sustained objections to the following questions:

"Yes; and you have known all that time that he was the holder of considerable real estate, haven't you, in this neighborhood?

"You knew and had in mind when you brought this case, that Mr. Lyons was a man with a great deal of property, isn't that true?"

Counsel then offered to show by cross-examination that the motive which actuated her in making the charge was to obtain a large sum of money from appellant's father.' The offer was made in writing, and the court ruled that appellant might make the showing by any competent testimony. The appellant seems to have stood upon the ruling and to have abandoned any further effort to show what property Mr. Lyons owned, or any other circumstance tending to prove an ulterior motive on the part of the relatrix. The testimony produced by the state showed that the relatrix had lived with her parents for about seven years within a half mile of the home of appellant's father; and she had admitted that she knew the boy's father and the business he was engaged in. We find no error in the ruling.

When Miss Brown was on the witness stand she held the child in her arms. It was in the court room during the trial. It was not formally offered in evidence, but in her testimony she said it was the child whose paternity was in question. In his closing argument the county attorney called the jury's attention to the resemblance between the child and the appellant, requesting them to look at both and to see if there wasn't some resemblance. Counsel objected and asked the court

to rule upon the objection.  The court stated that the argument was being taken down, and that it was the custom of the court to rule on objections of that nature in an application for a new trial, and to permit counsel to take the risk of making statements outside the record.  The county attorney then repeated his statements and again called the jury's attention to the resemblance between the child and the appellant.  It is claimed the action of the county attorney was misconduct which should reverse the case, and further, that the court erred in refusing to give an instruction, in substance, that different persons with equal opportunities for observation will arrive at different conclusions as to whether an infant bears a resemblance to another said to be its parent; and that the features of a child less than four months of age are so immature and undeveloped as to be unreliable in determining its parentage; and also in refusing to instruct as follows:

"The infant involved in this case has not been introduced in evidence, and its appearance, if you have observed it, should not be considered by you in any manner for the purpose of determining its paternity."

The child was three and a half months old at the time of the trial.  The giving or refusing of the instruction was within the sound discretion of the trial court.  It was said in *The State, ex rel., v. Browning,* 96 Kan. 540, 152 Pac. 672:

"An exercise of the trial court's discretion can seldom be reviewed on appeal, and should the evidence afforded by an exhibition be weak or inconclusive or worthless the presumption on appeal would be that the jury gave it no more weight than it was entitled to receive."   (syl.)

The court, in considering the motion for a new trial, has reviewed the remarks of counsel for the state in the closing argument, and the presumption must be that the court believed the appellant was not prejudiced by what occurred.

The failure to appoint a guardian *ad litem* for the appellant is urged as reversible error.  In the Stout case, *supra,* where the defendant was an infant, the court appointed a guardian *ad litem* after the jury had been impaneled; and it was held that the appointment was in ample time to protect his rights.  There was no request for the appointment of a guardian in this case, although it was apparent that the appellant was an infant.  The failure to appoint was not such error as would justify a reversal.  It is not denied that the parents of the

appellant were present in court during the trial, sat by his side, and furnished him all the aid and assistance that a guardian *ad litem* could have furnished. He was ably represented by counsel, who seem to have taken every step necessary to protect his rights.

It is insisted that under chapter 184 of the Laws of 1917, extending the period of women's minority to twenty-one years, the relatrix was a minor when the case was tried, and complaint is made that no guardian *ad litem* was appointed for her. The record, however, shows she must have been eighteen in November, 1916, and the act of the legislature of 1917 does not purport to affect and, clearly, it was not the intention to change the status of one who had already reached the age of majority under the former law. (*Smith v. Smith*, ante, p. 629, 180 Pac. 231.)

The judgment is affirmed.