No. 22,318.

THE STATE OF KANSAS, *Appellee*, v. A. R. KAGI, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Change of Venue—Local Prejudice—Prejudice of Judge*. The record examined, and *held* that there was no error or abuse of discretion in refusing a change of venue on the ground of prejudice in the minds of the inhabitants of the county, nor on the ground of prejudice of the judge of the district court.

2. SAME—*Larceny—Verdict of Guilty—Sufficient Evidence*. In a prosecution for larceny, the evidence is examined, and *held* sufficient to sustain a verdict of guilty.

3. SAME—*Larceny—Unexplained Possession of Stolen Property—Instructions*. An instruction that the unexplained possession of stolen personal property shortly after the property is stolen is *prima facie* evidence that the possessor is the thief, and that it is for the jury to say from the testimony whether the personal property described in the information was stolen, and if it was stolen, was it found in the possession of the defendant recently thereafter, and if it was so found, is it now explained or unexplained by the defendant, is *held* to state the rule fairly, both to appellant and the state.

4. SAME—*Explaining Verdict—Testimony of Jurors Inadmissible*. Following *The State v. Johnson*, 99 Kan. 850, 163 Pac. 462, *held* that the testimony of members of the jury as to what transpired in the jury room, and what they understood by their verdict of guilty, furnished no ground for the granting of a new trial.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed November 8, 1919. Affirmed.

*A. C. Wilson*, of Lawrence, for the appellant.

*Richard J. Hopkins*, attorney-general, and *J. B. Wilson*, county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was convicted of grand larceny in stealing and carrying away a Holstein calf, about one day old, which was the property of A. W. Garvin.

The contention that the court erred in refusing a change of venue is not sustained by the record. The attempt to show prejudice against the appellant in the minds of the inhabitants of Douglas county was so weak that the state offered no

counter-evidence. It consisted of affidavits of two persons who stated that they had heard other persons speak of the appellant as a "crook," from which they concluded that he could not have a fair trial in that county. The court's ruling on the application is a finding that in the court's opinion there existed no such prejudice in the community as would prevent the appellant from having a fair trial. (*The State v. Tawney*, 83 Kan. 603, 112 Pac. 161.) Another ground was the alleged prejudice of the judge; and attention was called to a remark made by the court with respect to the appellant in overruling his motion for a new trial in a divorce case heard at some previous term of the court. The statement was as follows:

"It is contended by counsel that the plaintiff in this case is insane. It is also contended that if these parties are divorced they will remarry again within one year. Concerning this I have to say, that if this woman should remarry this man and again live with him within one year, that of itself would be the strongest evidence of her insanity that I have seen."

The remark was doubtless based upon disclosures in the divorce case. It did not establish prejudice. See *The State v. Tawney*, supra, where it was held that unfavorable comment of the court in denying a motion for a new trial in a former trial of the same case was insufficient as a ground for reversing a decision refusing a change of venue. (See, also, *The State v. Bohan*, 19 Kan. 28.)

The cases cited also furnish a complete answer to appellant's contention that prejudice in the mind of the judge was established by a statement in overruling the motion for a new trial, to the effect that if the jurors had heard the appellant's little boy testify in the divorce case how appellant had tried to teach him to steal they would not have been out so long agreeing upon a verdict convicting him of stealing the calf. The qualifications of a judge to sit in the trial of a case are different from those required of a juror. The fact that the judge may believe the accused guilty of the crime charged is not sufficient to show prejudice, for two reasons: he is not the trier of the facts; and his legal training and experience enable him to pass upon the admissibility of evidence and to give the proper instructions regardless of his own belief as to the guilt or innocence of the accused.

The testimony of the state showed that Garvin operates a dairy farm north of Lawrence. On September 4, in the after-

noon, his manager, Anderson Morris, discovered that a Holstein cow in the east pasture had given birth to a calf. He noticed the markings of the calf, the color and spots, and when he came away the calf was alive and in normal condition. On the next day the calf was missing from the pasture. The cow went to the fence on the east side and bawled, and gave indications that the calf had disappeared at a certain point next to a public road running north and south. At the same point there were wagon tracks and horse tracks, showing that someone had driven with a wagon to the side of the road near the Garvin pasture fence and stopped for a considerable length of time; and there was evidence of a man's footprint on the slight rise or bank of the ditch between the traveled part of the road and the pasture.

The appellant, Kagi, was in the dairy business, and lived about four miles north and east of the Garvin pasture. On the 6th of September, Morris, Garvin's manager, went to Kagi's place on other business, and found in Kagi's henhouse a small calf bearing the same marks as the one Garvin had lost, and not more than two days old. On the day following, Garvin and Morris went to Kagi's place and demanded the calf. Kagi told them to take it if it was theirs.

On the trial appellant made a statement at much length in explanation of his possession of the calf. He testified that he owned a Holstein cow which he expected would drop a calf about that time, and that the last place he had seen his cow before she came up to the barn with the appearance of having delivered a calf was at a nook or corner of his pasture, which was cut off from the rest of the pasture by a certain draw, and that the way she acted indicated that she had hidden the calf up there somewhere, and that he finally found it there, and that it was the calf taken from his henhouse by Garvin. He admitted that on September 4 he stopped on the side of the road by Garvin's farm, near the place testified to by plaintiff's witnesses, and said he did so for the purpose of fixing a loose burr on his wagon and to get a switch to use on his horses; that he procured a stick just outside the pasture fence, and stepped one foot on the "little rise" in the ground near the fence; and that he saw no cow on Garvin's farm at that time. In explaining why he thought it was possible that

the calf did not belong to him, and why he allowed Garvin to take it, he said that, "knowing this cow had gotten out in the road the night before, it occurred to me that it might be possible that it came as far as Mr. Garvin's place and lured this calf away, and it might have been possible that she laid in the woods around there during that day, and I did not find it until the next morning, and he seemed so sure it was his calf that I let him take it."

One contention urged is that the evidence was insufficient to justify the verdict. We think it was amply sufficient. Besides, the trial court heard and saw the witnesses and approved the verdict. (*The State v. Mumford,* 70 Kan. 858, 79 Pac. 669.)

Complaint is made of the following instruction:

"Some evidence has been introduced tending to show that after the time that it is claimed the property of Mr. Garvin was stolen, it was found in the possession of the defendant. Touching this branch of the case, I have to say that the unexplained possession of stolen personal property shortly after the same is stolen, is *prima facie* evidence that the possessor is the thief. In this case, it is for the jury to say from the testimony, First, whether the personal property described in the information was stolen, and if it was stolen, was it found in the possession of the defendant recently thereafter, and if it was so found, is it now explained or unexplained by the defendant."

The instruction states the rule of evidence in criminal cases very fairly, indeed, to both the appellant and the state. The instruction is not nearly so strong against the appellant as one which was held not to be erroneous in *The State v. White,* 76 Kan. 654, 92 Pac. 829, and which in so many words charged that the burden of explaining the possession was upon the defendant, "and if unexplained, or if his explanation is not satisfactory, it is sufficient of itself to warrant a conviction." (p. 663.)

The appellant complains that he was not permitted to offer evidence to show the value of the stolen calf. There was no error in this. Under section 121 of the crimes and punishments act (Gen. Stat. 1915, § 3448), the larceny of any "neat cattle" is made a felony without respect to the value of the animal stolen. It was unnecessary for the state to establish that the calf possessed any value; and the only effect of the proof offered by the appellant would have been to confuse the jury upon a matter not involved in the issues.

On the motion for a new trial the appellant sought to show by the testimony of two members of the jury what transpired in the jury room, and that they understood by the verdict of guilty that Garvin should be permitted to keep the calf alleged to have been stolen, but did not understand appellant was to go to the penitentiary. As said in a recent case where affidavits were offered—

"The affidavits add nothing to and take nothing from the verdict, and it is to be interpreted precisely as if the affidavits had not been filed." (*The State v. Johnson,* 99 Kan. 850, 851, 163 Pac. 462.)

The judgment is affirmed.