No. 25,183.

STATE OF KANSAS, *Appellee,* v. WILLIAM NORRIS, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Murder—Sufficient Evidence to Convict.* The evidence is held sufficient to sustain a conviction of murder.

2. SAME—*Information—Variance Between Allegations of Information and Proof Not Ground for New Trial—One Aiding and Abetting Crime Equally Guilty with Principal.* Where an information for murder charges that A and B committed murder by shooting, alleging that the weapon was held by B, and A on a separate trial is convicted on evidence showing that he aided and abetted a person who fired the fatal shot, it is not a ground of reversal that the state failed to prove the man who did the shooting to have been B.

3. SAME—*Trial Rulings Not Reversible Error.* Various trial rulings are held not to have constituted reversible error.

4. SAME—*Motion for New Trial—No Showing of Diligence.* A motion for a new trial on the ground of newly discovered evidence is held to have been unavailable for want of a showing of diligence.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed March 8, 1924. Affirmed.

*James B. Kelsey,* of Leavenworth, and *A. E. Crane,* of Topeka, for the appellant.

*C. B. Griffith,* attorney-general, *Malcolm McNaughton,* county attorney, and *William D. Reilly,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: William Norris appeals from a conviction of murder in the first degree.

1. Tony Gwartney, a Leavenworth taxi driver, gave testimony tending to show these facts:

Norris came to him about 10:30 at night at his usual stand and told him to come on, that he might give him a drive [*i. e.,* furnish him a passenger] to Kansas City. They got into the car and at the direction of Norris, Gwartney drove to the Burlington depot, where Norris went into the station. A stranger to him wearing a cap came to Gwartney and asked if he had brought Bill down, receiving an affirmative answer. Norris then returned and he and the stranger got into the car, occupying the back seat. By direction of Norris, Gwartney then drove them to the corner of Grand and Olive streets, near the home of Wright, the murdered man, which was about two

blocks south and a little over a block west of this corner. On the way Gwartney heard Norris say to the stranger—"It works hard on the trigger." Norris and the stranger left the car and went south, being visible as far as Spruce street, the next street to Olive. Shortly after they left Gwartney heard a shot, followed by a cry and then another shot. Soon Norris returned to the car and told Gwartney to start the motor and wait. The stranger presently returned without his cap and got into the car, saying "he had to blow this one." Gwartney by direction of the others then drove to Sixth and Cherokee, where Norris got out, telling him to take the stranger to Kansas City. He did so. The stranger had him stop at Tenth and Locust where he got out and shortly returned with a cap. They then drove to Tenth and Wyandotte where the stranger left him.

There was evidence that Wright was found between 10:30 and 11 o'clock some 250 feet northeast of his house, on the street west of Grand, with two bullet wounds in his body. A cap was lying near him.

Norris testified that he had ridden with Gwartney to the depot but left him there, denying absolutely that he drove with him to Grand and Olive or anywhere else, or that he met the stranger of whom Gwartney testified.

Other evidence was introduced on both sides, some of it quite favorable to the appellant, but none of it need be set out because obviously Gwartney's testimony, if given credit, was sufficient to sustain a conviction, and its credibility was a matter for the final determination of the jury and trial court. If what Gwartney said was true it afforded strong proof that the stranger was the man who murdered Wright, and almost as strong that the act was done in connivance with Norris. The truth of Gwartney's story was the vital matter in issue.

2. The information charged Norris and Eddie Wine jointly with the murder of Charles Wright, alleging that they shot him with a revolver "held in the hands of him the said Eddie Wine." The evidence tended to show that the fatal shot was fired by a person whom Norris aided and abetted but who was not proved to be Wine. The jury were instructed on this phase of the matter that Norris might be convicted if he aided or abetted "another" in the shooting and killing of Wright. In behalf of the appellant it is urged that in pleading that Wine did the shooting the state made that allegation a substantial part of the description of the offense—of the means by

which it was committed—and to procure a conviction was required to prove it. The statute permits one who counsels, aids or. abets in the commission of an offense to be charged in the same manner as if he were a principal. (R. S. 62-1016.) The prosecution relied upon testimony tending to show that a person unknown to the witnesses, but whom the prosecution endeavored to identify as Wine, did the shooting and that Norris counseled, aided and abetted him, accompanying him to the place of the homicide. There is nothing whatever in the record to indicate that it made any difference to Norris in the presentation of his defense whether the person described by the witnesses was Wine or some one else. Even with respect to the means by which a murder is committed it is only necessary that there shall be a substantial correspondence between the allegations and the proof; a variance in that respect is not fatal if it is of such a nature that the defendant cannot be misled. (30 C. J. 134.) An allegation that the weapon was held in the hands, or in either hand, need not be proved. (Same, 137.) So far as Norris is concerned the charge in substance was that he and the person who did the actual killing were guilty of the murder. The state saw fit to prosecute him jointly with Wine against whom the charge was that he was the other participant in the crime. No inconsistency would have been involved if Norris had been convicted on the ground that he aided the man who fired the shot, while Wine was acquitted on the ground that he was not that man. The naming of Wine in the pleading was not required for the purpose of making it good against Norris, but was necessary in order that both should be charged in the same information. If it was proved that some one shot and killed Wright and that Norris aided him ·in the crime, it was immaterial to Norris whether the person whom he aided was named Wine or whether he was the person who was under arrest, unless the circumstances were such that the allegations in that regard hampered Norris ·in making his own defense, which does not appear to be the case. See *The State v. Patterson,* 52 Kan. 335, 34 Pac. 784, where a conviction of Patterson was sustained although it was charged that he and a codefendant held the pistol with which the killing was done while the evidence showed that it was neither of them but a third person not named in the information.

3. In the appellant's brief a number of articles from Leavenworth papers are quoted to show public sentiment was so worked upon that a fair trial could not be had. These quotations are not

a part of the record and are not pertinent to any ruling complained of. The brief also says that the assignments of error "might be said to be merged into the one, because the judgment so rendered is contrary to the evidence introduced." As already said, we regard the evidence as sufficient to support the judgment. After the prosecuting attorney had made his opening statement the defendant moved for his discharge on the ground that it did not refer to evidence of venue or the fact of the killing. By leave of the court an additional statement was made concerning these matters, and of this complaint is made. It of course was not necessary that the preliminary statement should refer to evidence on all matters essential to a conviction. Complaint is also made of rulings sustaining objections of the state to questions asked in behalf of the defense of the father of the murdered man. No showing under oath was made as to what the answers would have been, so that the rulings are not subject to review. Moreover it does not appear that they could have been prejudicial. Further complaint is made of the manner in which a witness for the appellant was cross-examined and of language used by the prosecuting attorney in addressing the jury. We regard the cross-examination as within the court's discretion, and the prosecutor's argument as affording no ground for a reversal, even if a record of it had been preserved, which does not seem to be the case.

4. One of the grounds on which a new trial was asked was the discovery of new evidence which was set out in affidavits. No showing whatever was made that the evidence could not with due diligence have been produced at the trial. One of the affidavits was that of the motorman of the street car on which Wright rode out on the night of the murder, who stated that the shots were fired at 10:51 p. m.; that he saw no one running away from the place of the shooting and saw no automobile pass him as he was going east on Spruce street; and that a strange man wearing a cap got on his car at Fifth and Choctaw and got off before reaching the end of the Spruce street car line. (At the trial there was testimony that Wright had said he believed he was shot by a stranger whom he saw on the car.) Three acquaintances of Norris made affidavit that they saw him near Third and Delaware—something over a mile from the scene of the murder—between 10:50 and 11 o'clock on the night it was committed. Another affidavit said that Wright did not go out on the street car which reached Grand and Spruce at 10:40 p. m., and the remaining one was to the effect that Wright had said that

Norris should be released as he was not the man who shot him. Evidence was given at the trial of a similar statement by Wright, but it did not appear that he knew of the evidence of Gwartney. The new evidence was hardly of sufficient force to require a reversal, and the absence of proof that it could not have been produced at the trial renders it unavailing in any event. The record shows that Gwartney had told his story at the preliminary examination and it seems apparent that at least a considerable part of the evidence contained in the affidavits could readily have been procured in time for use at the trial.

The judgment is affirmed.