The State v. Buckle.

No. 25,023.

THE STATE OF KANSAS, *Appellee*, v. ED E. BUCKLE, *Appellant*.

SYLLABUS BY THE COURT.

1. STATUTORY RAPE—*Indorsing Names on Information During Trial No Error.* The indorsement of names of witnesses on an information after the impaneling of the jury is held not to have been prejudicial.

2. SAME—*Exhibition of Child to Jury—Not Error.* In a prosecution for rape involving the question whether the defendant was the father. of the complainant's child, the conduct of a witness in showing the child to the jury and commenting on its appearance is held not to be a ground of reversal.

3. SAME—*New Trial—Insufficient Grounds.* Affidavits in support of a motion for a new trial on the ground of newly discovered evidence are held insufficient, both for want of diligence and in respect to their subject matter.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed May 10, 1924. Affirmed.

*Robert H. Clogston,* of Eureka, for the appellant.

*Charles B. Griffith,* attorney-general, *R. T. McCluggage,* and *Stanley Taylor,* both of El Dorado, for the appellee.

The opinion of the court was delivered by

MASON, J.: Ed Buckle appeals from a conviction upon a charge of rape committed upon his stepdaughter, who reached the age of fifteen years August 20, 1922. She will be spoken of as the complaining witness, although her mother swore to the complaint. She gave birth to a normal child May 15, 1922. She testified that the defendant had had intercourse with her just before she was thirteen and frequently afterwards.

1. After the jury was sworn the county attorney asked and was given leave to indorse the names of three additional witnesses upon the information, over the objection of the defendant, and complaint is made of this ruling. The trial court stated at the time that opportunity would then be given to examine the new witnesses if desired by counsel for the defendant, who replied that it was too late to attempt it. It does not appear that the delay in indorsing the names was intended to prejudice the defendant or that it actually did so, and it is therefore not a ground of reversal.

2. The matron of the maternity home in which the child was born was a witness to the fact and date of its birth. She held it in

her arms while testifying, and according to an affidavit presented on the motion for a new trial, "arose from her seat, and  .  .  . held the baby out at arm's length and pranced up and down immediately in front of the jury and constantly looked at the baby and then to the defendant, who was sitting a few feet away, and made various remarks concerning the child, and directed this remark while looking directly at the defendant, "Isn't it a pretty baby?" Upon counsel for the defendant objecting to her conduct the court directed her to resume her seat. The contention is made that the motion for a new trial should have been granted on this account, on the theory that the purpose and effect of the action of the witness was to suggest to the jury a resemblance between the child, then six months old, and the defendant. That the jury were influenced by the episode does not seem probable, and the decision of the trial court on the motion may be regarded as establishing the contrary, even assuming it would have been error for the jury to consider the child's appearance. (See, however, *The State, ex rel., v. Lyons*, 104 Kan. 702, 180 Pac. 802.)

3. The ruling principally relied on by the defendant is the refusal to grant a new trial on the ground of newly discovered evidence tending to show that the complaining witness had testified falsely concerning her relations with a number of men and boys. On cross-examination she said that while living at Florence she never went out of town with any boys; that she never went riding with a certain jitney driver at Florence, although he took her mother and herself to the train when they went to the harvest fields—that she never went anywhere at night with him; that she never had any sweethearts; that she never went driving with a specified boy —a schoolmate, sixteen to eighteen years old, although he had a Ford. She was asked whether while out in Ford county, near Dodge City, she had had intercourse with anyone except the defendant, and answered that she had not. She was not asked whether she had at any time had intercourse with anyone else.

The affidavits setting out the newly discovered evidence included statements to this effect: On one occasion the jitney driver referred to had been seen in front of a drug store talking to the complaining witness, who was standing near his Dodge car. She had been seen one afternoon in the front seat of a car with the jitney driver, a man and woman being in the rear seat. (For anything shown in the abstract this may have been the time when, according to her

The State v. Buckle.

testimony, he took her mother and herself to the train.)    One affiant on several occasions saw the complaining witness in company with boys, both car riding and on the street.    Another saw her in company with several different boy friends, and at one time she asked this affiant to make arrangements with the boy already referred to for him to take her home after the picture show.    Another saw her and this boy often in company with each other after school hours.    Another saw her get a letter from the post office which she said was from the boy.    Another knew that she and the boy were together alone many times, both in the daytime and at night, but without specification as to the circumstances; she told the affiant she was corresponding with him—that her mother said she could keep company with him.    Another heard her say while in the hospital that her mother had written the boy that she was in a school for girls where they were very strict with her and he must not write any more.    One of the affiants already referred to saw the complaining witness on November 21, 1922 (four days after the trial), and was asked by her whom she thought the baby looked like; she answered in effect that it looked like the mother and sister of the boy already referred to; the complaining witness said it might look like him "but I don't know.    Nobody can make me say but what it was Ed Buckle's baby.  .  .  .    It makes no difference what evidence Ed Buckle brings, we will convict him."    The part of this affidavit referring to the appearance of the baby was corroborated by one of the other affiants, while another who was present at the conversation testified only to hearing the complaining witness ask whether just thinking about the boy while carrying a baby would make it look like him.

This newly discovered evidence has no substantial tendency to show either profligate conduct or willful perjury on the part of the fifteen-year-old complaining witness.    Her testimony that she never had any sweethearts cannot fairly be regarded as denying such association with boys or young men as the affidavits set out.    The contradiction undertaken to be shown with reference to particular individuals is not sufficiently direct or specific to have much value by way of impeachment.    Moreover, the evidence offered, except that regarding statements made since the conviction, are unavailable, irrespective of their substance, because no attempt was made to show that it could not with reasonable diligence have been procured in time for use at the trial.    That is essential in criminal

as well as civil cases. (*The State v. Nimerick,* 74 Kan. 658, 87 Pac. 722; *The State v. Norris,* 115 Kan. 693, 223 Pac. 1093.) The suggestion is made that the defense could not have anticipated the complainant's testimony. Her alleged contradictory statements out of court are material only so far as they bear upon the question of the paternity of the child, and it was obvious from the time of the arrest—March 20, 1922—that that was to be a vital issue. We cannot take it for granted that the evidence relating to this feature of the case could not have been developed before the trial as readily as afterwards.

The result of the trial depended on whether credence was given on the one hand to the testimony of the complaining witness (corroborated to a considerable extent by her mother) or on the other to that of the defendant. What she is reported to have said after the verdict tends to show ill feeling toward the defendant—a desire to see him punished—so that it is pertinent to the issue. It also suggests, though rather remotely, the question of some one else having been the father of the child. But we cannot regard it, alone or in connection with the other affidavits, as calling for a reversal of the ruling on the motion for a new trial.

The judgment is affirmed.