No. 42,344

State of Kansas, *Appellee,* v. Lee R. Hendrix, *Appellant.*

(363 P. 2d 522)

Opinion filed July 8, 1961.

*John C. Humpage,* of Topeka, argued the cause and was on the brief for the appellant.

*Robert F. Duncan,* Special Counsel, and *Maurice P. O'Keefe, Jr.,* County Attorney, argued the cause, and *William Ferguson,* Attorney General, was with them on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the appellant was charged with burglary in the second degree and the commission of larceny in one count pursuant to the provisions of G. S. 1959 Supp., 21-520, and G. S. 1949, 21-524. He was tried, convicted and sentenced to a term of thirty years in the Kansas State Penitentiary under the provisions of G. S. 1949, 21-107a and 21-523. Appeal has been duly perfected from the conviction and sentence presenting the questions hereafter considered.

The facts giving rise to this action may be briefly summarized as follows:

Sometime between 11:00 p. m., on March 28, 1960, and 9:00 a. m., on March 29, 1960, Vance's Liquor Store in the city of Atchison, Kansas, was burglarized. Approximately $950 worth (wholesale value) of whiskies, gin, champagnes and other alcoholic beverages were taken from the shelves and store of Vance's Liquor Store and, obviously, removed from the northwest window of the store. The glass had been broken from the window, and the outer weatherproof covering of *glassine cloth* had also been broken.

At 9:00 a. m., on March 29 an employee of the liquor store found much of the stolen merchandise on the ground outside of the northwest window when he arrived for work. Later in the morning the

Atchison police department found much of the stolen alcoholic beverages cached approximately 270 feet west of Vance's Liquor Store. All of the merchandise, found outside the northwest window of the store and that cached some 270 feet west of the store, was immediately taken into custody by the Atchison police department and there held until introduced as evidence at the trial of the appellant.

Before discovery of the break-in on the 29th day of March, the appellant and two of his companions, Jerry Flatt and Donna Flatt, husband and wife, were apprehended and arrested on Skyway Highway (U. S. Highway No. 59) approximately one and one-half miles west of the Vance Liquor Store. Another companion, George A. Fountaine, was apprehended by the Atchison police department later at approximately 7:00 a. m., on the 29th day of March, 1960.

All evidence leading to the arrest of the appellant and his above named companions was circumstantial.

At 2:00 a. m., on March 29th the appellant and his three companions, George A. Fountaine, Jerry Flatt and Donna Flatt, drove into Bill Roe's service station in Missouri, across the Mo-Kan bridge from Atchison, for water in their 1952 blue Cadillac automobile. The attendant, Roland Busch, on duty at the station, specifically noticed the automobile had no license plate on it at this particular time. At the trial he so testified and identified the four persons as being together at this particular time at his station.

When the appellant and his companions left Bill Roe's service station they drove east on U. S. Highway No. 59. Approximately ten minutes later Roland Busch observed the appellant and his other three companions headed in the opposite direction going west in the Cadillac. He observed them drive to the east approach of the Mo-Kan bridge and turn south where they turned off the lights of the Cadillac in the vicinity of John Dorsey's house.

At approximately 2:30 a. m., Roland Busch saw the lights of the appellant's car go on and return to the highway headed west across the Mo-Kan bridge to the Kansas side.

At approximately 3:00 a. m., Mrs. Roland Busch, proceeding in her automobile from the Kansas side to take her husband lunch at Bill Roe's service station, followed behind the blue Cadillac in question which was going east slowly across the Mo-Kan bridge. She observed two occupants in the vehicle, one a blonde in a red dress, and the other a male. Mrs. Busch continued to follow the

Cadillac across the bridge, where it made a U-turn and headed back west across the Mo-Kan bridge to Kansas.

When Mrs. Busch arrived at the service station she discussed the matter with her husband, Roland Busch, who at 3:20 a. m., called the Atchison police department to report the activities of the appellant and his companions.

At approximately 3:35 a. m., the appellant, Donna Flatt and Jerry Flatt, were stopped by a police officer within the general area of Vance's Liquor Store. The officer found the appellant had a Kansas driver's license and a Missouri license plate on his automobile, whereupon he and his two companions were apprehended. The Atchison police immediately called the owner of the Missouri license plates, John Dorsey, who checked to find that his license plate, M-19-341, was missing from his 1954 automobile parked in front of his home on the Missouri side of the Mo-Kan bridge. John Dorsey then proceeded to the Atchison police station and saw his license plate on the blue Cadillac being driven by the appellant.

At the time of the appellant's arrest a search was made of the Cadillac and tools suitable for use in burglaries were found by the police officers between the front and rear seats of the automobile.

After the burglary was discovered, a microscopic examination of clothing worn by the appellant and sweepings taken from the Cadillac automobile in question was made by the Kansas Bureau of Investigation. It revealed *glassine particles*, similar to the *glassine* material which had been broken on the northwest window of Vance's Liquor Store, on the appellant's cap, socks and trousers. Similar *glassine particles* were found in the sweepings taken from the back seat of the Cadillac automobile.

There was evidence that it was physically impossible for one person to remove the tremendous quantity of liquor from the inside of Vance's Liquor Store through the northwest window, it being too high for one person to get the job done.

The appellant and his three companions were charged jointly in one complaint upon which a warrant was issued and served. After preliminary hearing the appellant was bound over to the district court of Atchison County, Kansas, on or about the 7th day of September, 1960. Inasmuch as George A. Fountaine entered a plea of guilty and was sentenced separately, the informa-

tion upon which the appellant was charged omitted Fountaine as one of the joint defendants.

The appellant first contends the trial court erred in overruling his petition for change of venue on the ground that the district judge was disqualified to preside at the trial.

In his petition for change of venue the appellant sets forth Exhibit "A" filed in his case, which he calls "a joint statement of the Honorable Edmund L. Page and the County Attorney of Atchison County, Kansas," contending that at the time the district judge filed the statement he had heard no evidence in the case whatsoever and was not fully apprised of the facts and circumstances surrounding the case. The statement filed by the judge contains the following:

"a. Even after his [George A. Fountaine's] plea of guilty in the case, he has maintained that the other persons participating in the crime were innocent, not knowing that this jurisdiction has a scientific data which definitely connects and establishes the said confederates participation in his crime of burglary.

"b. The prisoner was a native of Topeka, Kansas, at the time of his apprehension. He was apprehended along with one Jerry R. Flatt, Donna Flatt and Lee Hendrix. These four individuals were professional burglars from Topeka and came to Atchison with the avowed purpose of cleaning out one of the local liquor stores of approximately $1,000.00 wholesale value, with the anticipated object of selling this whisky through illicit channels."

The appellant's petition for change of venue then recites:

"That the statements set out in Exhibit 'A' made by the Honorable Edmund L. Page and filed in this case and made a part thereof are wholly unnecessary insofar as the duty of this court is concerned to advise the Kansas State Penitentiary relative to the background of George A. Fountaine and the text of Exhibit 'A' clearly demonstrates the court's passion and prejudice in this case when considered with the rest of the file herein wherein George A. Fountaine was sentenced under the Habitual Criminal Act of the State of Kansas and notwithstanding said sentence, the court found it necessary to enter this joint statement, to further depricate George A. Fountaine and at the same time vent his feeling insofar as this defendant is concerned."

Filed with the petition was an affidavit of prejudice and bias signed by the appellant, and a further petition for an order disqualifying the district judge.

The petition for change of venue and for an order of disqualification was overruled. Thereupon the trial court granted the appellant's motion for a separate trial.

Although repealed by the 1957 session of the legislature, the joint statement of facts of the district judge and the county attorney was filed pursuant to G. S. 1949, 62-1523, and was admittedly signed by

the Hon. Edmund L. Page and the county attorney, Robert F. Duncan. (The joint statement was not before the jury at the appellant's trial.)

The appellant contends, in view of the charge made in his affidavit, the trial court was disqualified in the absence of evidence or proof made by counter affidavit refuting the charge of prejudice. This point is not well taken.

The question whether a trial judge was prejudiced against a criminal defendant was before the court in *State v. Morrison,* 67 Kan. 144, 72 Pac. 554. There affidavits of bias and prejudice of the trial judge were filed in support of a motion for change of venue. The trial judge was charged in affidavits by Butler and Swan with saying: "I could have been on the defense in that case, but did not feel like defending a person that was as guilty as I believe Jessie Morrison is;" and further said: "The Morrison case was one of the issues on which I was elected." There was a further affidavit by Grinstead which charged the trial judge as saying: "that Jessie Morrison was a murderess and ought to be hung; . . . that when he became convinced of the guilt of a person as he was of the guilt of said Jessie Morrison, he had no hesitation in saying so."

In opposition to the motion a counter affidavit was filed by McGinnis who was present at the time Grinstead called and introduced himself to the judge, when the statements to Grinstead were alleged to have been made. The affidavit of McGinnis refuted the affidavit of Grinstead. The trial judge also filed a statement in writing in which he positively disclaimed making any such statements as were attributed to him by Grinstead. He positively disclaimed any bias or prejudice whatever against the defendant.

In disposing of the charge of bias and prejudice it was said in the opinion:

". . . Had the affidavit of Grinstead stood unchallenged in the record, the allegations therein contained would go far to sustain the charge of prejudice made against the trial judge, but this affidavit is flatly contradicted both by the affidavit of McGinnis and the statement of the trial judge. Again, as appears from the record, this affidavit was taken by the attorneys for the defense prior to the first trial of the cause presided over by Judge Aikman, but was not filed or used until the present application was made.

"As to the affidavits of Butler and Swan, it may be said that the belief or disbelief of a trial judge in the guilt of a defendant put upon trial before him is not a test of his qualification to preside at such trial. A trial judge may be convinced from his personal knowledge of the case, or what he has heard from others, of the guilt of one put upon trial before him, and yet with the utmost

fairness and impartiality conduct the trial and give the defendant a fair and impartial hearing. It is the existence of prejudice or bias in the mind of the trial court against defendant which must be clearly shown in support of an application for a change of venue from the court presided over by such judge, not the belief of the judge in the guilt of defendant. . . ." (pp. 149, 150.)

We do not think the joint statement filed by the trial judge in the instant case is sufficient to indicate such bias or prejudice against the defendant as would preclude the defendant from having a fair trial before him. The mere belief on the part of the trial judge that a defendant is guilty of the crime charged is not enough in itself to require a disqualification. The question is not whether the trial judge believes the defendant guilty, but whether the trial judge can give him a fair trial.

Two reasons are assigned why the belief of a trial judge in the guilt of the accused is not sufficient to show prejudice; first, he is not the trier of the facts; and second, his legal training and experience enable him to pass upon the admissibility of the evidence and to give the proper instructions regardless of his own belief as to the guilt or innocence of the accused. (*State v. Kagi,* 105 Kan. 536, 185 Pac. 62.)

In *State v. Cole,* 136 Kan. 381, 15 P. 2d 452, it was said:

". . . The court does not weigh the evidence. It is the duty of the court to rule on the admissibility of evidence and to instruct the jury. He can do this fairly even though he does think the defendant guilty. It is only when such prejudice is shown as prevents the trial court from performing these duties fairly that the defendant is entitled to a change of judges. It is the duty of the trial judge when challenged in this manner to search his conscience as to this condition. The ruling of the court on that question of fact will not be disturbed unless there is other evidence of prejudice which overcomes the finding of the court. . . ." (p. 382.)

In the instant case the defendant was tried by a jury. The facts before the court are to be distinguished from the cases of *In re Estate of Hupp,* 178 Kan. 672, 291 P. 2d 428, (where the case was tried a second time to a trial judge in which only the transcript of the testimony was presented as evidence); *Jones v. Insurance Co.,* 83 Kan. 44, 109 Pac. 1077, (where the trial judge had an interest in the outcome of the lawsuit as a stockholder and director in a bank); and *Kansas Pacific Rly. Co. v. Reynolds,* 8 Kan. 623, (where the trial judge had previously been of counsel in the case).

The appellant contends it was error for the trial court to permit the name of Mrs. Roland Busch to be endorsed on the information after the trial commenced.

G. S. 1949, 62-802, provides in part that the county attorney "shall prescribe his name thereto, and endorse thereon the names of the witnesses *known* to him at the time of filing the same [the Information]. He shall also endorse thereon the names of such other witnesses *as may afterward become known to him,* at such times before the trial as the court may by rule or otherwise prescribe." (Emphasis added.)

The trial judge, after permitting endorsement of the name of Mrs. Busch on the information, gave defense counsel an opportunity to talk with and examine the witness before she was permitted to take the stand, but the appellant's counsel declined this opportunity. The testimony of Mrs. Busch concerned the description of the Cadillac automobile in question and the occupants therein at the time she saw it at approximately 3:00 on the morning in question. For the most part it constituted cumulative evidence, since her husband had previously testified concerning the 1952 blue Cadillac and its occupants.

It has been held the endorsement of additional names of witnesses on the information, even during a trial, rests in the sound discretion of the trial court, and where permitted material prejudice to the defendant must be clearly shown before it constitutes reversible error. (*State v. Burgett,* 174 Kan. 102, 254 P. 2d 254; *State v. Lange,* 121 Kan. 703, 249 Pac. 595; *State v. Howland,* 100 Kan. 181, 163 Pac. 1071; and *State v. Buckle,* 116 Kan. 51, 225 Pac. 1035.)

Considering all the surrounding facts and circumstances presented by the record herein, it fails to indicate that the trial court abused its discretion in permitting the endorsement of the name of Mrs. Busch on the information after the trial had commenced.

The appellant contends the court erred in allowing the purported alcoholic beverage to be admitted in evidence.

The admission of the alcoholic beverage in question into evidence was objected to by the appellant on the ground that Mr. Vance, the alleged owner, could not identify any of the bottles by serial number. He identified two cases by his name on the container.

Mr. Vance testified the quantity of liquor stolen from his store was the same as the quantity found by the Atchison police department near his store on the morning the burglary was discovered. The identity of the liquor in question after it came into the pos-

session of the police department was sufficient, since it was at all times under the control of the chief of police who had recorded the serial numbers of the bottles found on the morning in question.

Briefly summarized, the foundation for the admission of the liquor in question into evidence was that Mr. Vance, the owner of the liquor, identified the liquor as that which was stolen from his store, but could not positively identify each bottle when cross-examined on this point. The appellant's objection, therefore, goes merely to the weight and not to the admissibility of the evidence. (20 Am. Jur., Evidence, § 885, p. 744.) In *Bank v. Robinson*, 93 Kan. 464, 144 Pac. 1019, it was held an owner may testify that he is the owner of certain personal property, and if his adversary desires the constituent facts upon which such claim of ownership is based, he may elicit them on cross examination.

The appellant's final contention is that the state failed to sustain its burden of proof, which required that it exclude every reasonable hypothesis of the defendant's innocence in its presentation of the case.

As heretofore stated, the state was required to rely upon circumstantial evidence for a conviction in the prosecution of this case. Where circumstantial evidence is relied upon to sustain a conviction, the circumstances must be so strong as not only to be consistent with the theory of the defendant's guilt, but they must exclude every reasonable hypothesis except that of the guilt of the defendant. (*State v. Sweizewski*, 73 Kan. 733, 85 Pac. 800; *State v. Robinson*, 158 Kan. 287, 147 P. 2d 374; and *State v. Goldsberry*, 160 Kan. 138, 160 P. 2d 690.)

Having carefully reviewed all of the evidence presented by the record as related to the contentions advanced by the appellant, we conclude the circumstantial evidence presented by the state in the instant case was sufficient to sustain a verdict of guilty.

The judgment of the lower court is affirmed.