No. 19,421.

THE STATE OF KANSAS, *Appellee*, v. WILL RICE, *Appellant.*

SYLLABUS BY THE COURT.

1. BURGLARY—*Unexplained Possession of Stolen Goods.* Proof that a burglary was committed and that the stolen goods were shortly thereafter found in the possession of the accused, when considered in connection with all the other facts and circumstances of the case, including his failure satisfactorily to explain such possession, will sustain a conviction of burglary.

2. SAME—*Conviction of Burglary in the Nighttime—Insufficient Evidence.* The defendant was convicted of burglary in the nighttime without evidence showing at what time the offense was committed. Burglary in the daytime being the lesser of the two offenses, the presumption in favor of the appellant is that it was committed in the daytime, and for this reason the judgment is reversed and a new trial ordered.

Appeal from Bourbon district court; CHARLES E. HULETT, judge. Opinion filed December 12, 1914. Reversed.

*Charles A. Blair*, of Fort Scott, for the appellant.

*John S. Dawson*, attorney-general, and *S. N. Hawkes*, assistant attorney-general, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was charged with the crime of burglary in the nighttime. The jury returned a verdict of guilty. The court overruled a motion for

a new trial and rendered judgment on the verdict. In his appeal it is urged that the verdict is contrary to the law and the evidence.

The state proved that sometime between Tuesday or Wednesday and the following Sunday morning some one broke open the kitchen door of a dwelling house belonging to Mrs. Funkhouser, in the city of Fort Scott; that certain property belonging to her, consisting of a revolver and some canned fruit, was stolen and carried away. There was evidence showing that the missing property was found in the possession of the appellant. The officers made a search of his house on Monday, during his absence, and found some canned fruit covered with a blanket at the foot of a bed, and some more fruit was found covered up behind a trunk.. A revolver, which Mrs. Funkhouser identified as belonging to her and as the one taken from her house, was found in appellant's bed under a pillow. The officers testified that they started to the coal bank to arrest the appellant and met him coming toward town; that at first he said he did not have any revolver, but when they showed him the revolver in question he said, "How did you get into my house?" This was about all that was said at the time he was arrested.

The appellant in his testimony explained where he had been on Saturday, January 3, and on the night of that day until about midnight when he said that he came home and went to bed, and did not get up next morning until about nine o'clock; that he was told at the coal bank Monday that the officers were looking for him. In reference to the property, he testified as follows:

"The revolver here in evidence with a black handle and white barrel is mine. It is a .32 caliber revolver. Last fall a white man came through town and I traded him an old set of harness for this revolver, and I have had it ever since. All this canned fruit here in evidence is also mine. My mother and Mrs. Coates put up some of it for me two years ago, and I put up the balance

myself last year.   I learned from my mother and Mrs.
Coates how to put up fruit, and last fall I bought some
peaches of Mrs. Kellar.   I have not been in Mrs. Funk-
houser's house for several months, and I never broke
into her house on the 3rd of January or at any other
time."

The first contention is that the possession of recently
stolen goods without other criminating circumstances
showing guilt is insufficient as a matter of law to sus-
tain a conviction of burglary.   It is insisted that in the
present case there are no criminating circumstances in-
dicating guilt, and nothing in the evidence to connect
appellant with the crime, save and except the posses-
sion of the goods; that his explanation, which the jury
rejected, even if unsatisfactory, could not put him in a
worse position than no explanation at all.   The authori-
ties cited by the appellant hardly sustain his contention.
In fact, they are in accord with the well-settled rule
that the possession by the accused of property recently
stolen on the occasion of a burglary is sufficient to sus-
tain a conviction of burglary where a satisfactory ex-
planation is not given.   Counsel quote from Underhill
on Criminal Evidence, a part of which reads as follows:

"The true rule doubtless is that the mere possession
of stolen property creates no presumption of law that
the person in whose possession it was found committed
the burglary in which they were taken.   The posses-
sion is a circumstance to go to the jury, and its weight
is for them.   The *corpus delicti* of the burglary, that is,
the breaking in and entering, must be proved by inde-
pendent evidence and can not be presumed from evi-
dence of mere possession.   If it appears that a burglary
was in fact committed, the possession by the accused
is a circumstance from which, in connection with all the
evidence, the jury may presume as a matter of fact that
he committed it."   (p. 441.)

Also the following from the opinion in *The State v.
Powell,* 61 Kan. 81, 58 Pac. 968:

"The possession of stolen goods taken on the oc-
casion of a burglary is evidence tending to establish
the guilt of the possessor, and may, when taken in con-

nection with other criminating circumstances, raise a presumption of guilt sufficient to warrant a conviction, but the mere possession, without any other facts indicative of guilt, is not *prima facie* evidence that such person committed a burglary." (p. 86.)

Other authorities cited by counsel go no further than to hold that whether or not the explanation is a reasonable one is a question for the jury to determine.

In *The State v. Powell,* supra, an instruction was held bad which charged that the unexplained possession of property recently stolen is *prima facie* evidence of the burglary charged. It was said in the opinion:

"It has been frequently held in this state that such possession, unexplained, is *prima facie* evidence of larceny, but the instruction goes close to, if it does not pass over, the danger line when it throws the burden on the defendant of proving how he came into possession of the property. The burden of proof is upon the state, and does not shift or change to the defendant at any stage of the case. Many of the late authorities incline to treat such possession as a disputable, rather than a conclusive presumption, holding that it should be received as tending to prove the guilt of the defendant, but that the force and effect of the evidence is for the determination of the jury, when considered in connection with all the other facts and circumstances of the case." (p. 84.)

The opinion refers to the case of *The State v. Conway,* 56 Kan. 682, 44 Pac. 627, where it was held that the possession of property recently stolen may be received as tending to show the commission of a burglary, but it is not of itself sufficient to create a presumption of guilt. In *The State v. Gillespie,* 62 Kan. 469, 63 Pac. 742, it was held that the trial court erred in rejecting evidence of the declarations of the person found in possession of the stolen goods as to how he came by them, notwithstanding they were self-serving in character. In the opinion it was said:

"Nor do we think that, as a matter of law, the mere possession of goods recently stolen on the occasion of a burglary may be sufficient, even in connection with other criminating circumstances, to raise a pre-

sumption of guilt of the burglary. . . . It is the *unexplained* possession of recently stolen goods that tends to show guilt or raises a presumption of guilt of the larceny, and it is the *unexplained* possession of goods recently stolen on the occasion of a burglary that tends to show guilt or raises a presumption of guilt of the burglary." (p. 474.)

In *State of Iowa v. Brady,* 121 Iowa, 561, 97 N. W. 62, the court said in the opinion:

"The law does not attach a 'presumption of guilt' to any given circumstance, nor does it require the accused to 'overcome the presumption thereby raised,' in order to be entitled to an acquittal." (p. 567.)

In this connection see *The State v. White,* 76 Kan. 654, 663, 92 Pac. 829, and *The State v. Jewell,* 88 Kan. 130, 132, 127 Pac. 608.

Among other cases to the same effect are *Smith v. The State,* 58 Ind. 340; *Ingalls v. The State,* 48 Wis. 647, 4 N. W. 785.

In an elaborate note to the case of *State of Iowa v. Brady,* supra, reported in 12 L. R. A., n. s., 199, there will be found a full discussion of the question. The author of the note says:

"The weight of authority is that proof that a burglary was committed, and that goods were then and there stolen, and shortly thereafter found in the possession of the accused, will sustain a conviction." (p. 211.)

It must be borne in mind that the question we have to determine is not the character of the presumption, nor its weight, nor indeed whether or not any presumption obtains; nor have we to determine the question whether or not the possession of recently stolen property taken at a burglary is *prima facie* evidence of the burglary. The precise question is whether the recent possession of property stolen in a burglary, together with criminating circumstances, including the failure of the appellant to make a satisfactory explanation of his possession of the property, is sufficient

to sustain a conviction. In our opinion the great weight of authority as well as of sound reason supports the rule that the possession of the accused of recently stolen property is sufficient to sustain a conviction of burglary where satisfactory explanation is not given. In addition to the cases cited see *State of Iowa v. Raphael,* 123 Iowa, 452, 99 N. W. 151, 101 Am. St. Rep. 334; *Perry v. State* (Tex. Crim. App.), 55 S. W. 829; *State v. Munson,* 7 Wash. 239, 34 Pac. 932.

The appellant at first denied that he owned or had a revolver. When he saw the officers in possession of the one in question he asked, "How did you get into my house?" The jury heard his explanation of how he obtained the revolver by purchase from some unknown person passing through the town, and the rule is well settled that the reasonableness of the explanation is a question for the jury. (*The State v. Powell,* 61 Kan. 81, 58 Pac. 968; *The State v. McKinney,* 76 Kan. 419, 91 Pac. 1068.) In *Jordan v. The State,* 119 Ga. 443, 46 S. E. 679, the recent possession of goods stolen at the time of a burglary was held sufficient to sustain a conviction of that crime taken in connection with the fact of the failure of the accused to explain the possession of the goods, except the statement that they were given him by two boys whose names he did not state. Our conclusion is that the evidence in this case is sufficient to sustain the conviction of burglary.

There is another important question in the case, and that is whether there was any evidence to sustain a conviction of burglary in the nighttime. Mrs. Funkhouser, who owned the dwelling house where the burglary was committed, testified that she was employed away from home; that when she was away she had a girl named Ethel Goins do her chores and look after her house; that on Monday or Tuesday of the last week in December she was at home and in the house, and when she came out she locked the kitchen door and gave the key to Ethel. She was not home again until Sunday afternoon, when Ethel called her and told her that

some one had broken into the house.  Ethel Goins testified that she was back there every morning and evening during the rest of the week doing chores, but did not go about the kitchen door or notice the same; that on Sunday morning, January 4, between nine and ten o'clock, she noticed for the first time that the kitchen door was open two or three inches, and she found that the bolt on the lock was broken off and lying on the floor.

A careful examination of the record fails to disclose any testimony which would warrant the jury in finding that the burglary was committed in the nighttime. There is no evidence in the record to show when the burglary was committed.  The offense of burglary in the daytime being the lesser of the two offenses, the presumption in favor of the appellant is that the burglary was committed in the daytime.

It follows that the judgment will be reversed and a new trial ordered.