No. 43,974

STATE OF KANSAS, *Appellee*, v. DICK MALONE, *Appellant*.

(400 P. 2d 712)

Opinion filed April 10, 1965.

*Eugene L. Pirtle,* of Wichita, argued the cause and was on the briefs for the appellant.

*A. J. Focht,* Deputy County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: The defendant, Dick Malone, was tried and convicted in the district court of Sedgwick County on three counts for the crimes of forgery, uttering and obtaining money by false pretenses, respectively, and, upon the overruling of his motion for a new trial, was sentenced to confinement in the state penitentiary as an habitual criminal. This appeal followed.

At the outset it shoud be pointed out, that due to changes in personnel, this is a case where attorneys now representing the respective parties have to some extent reconstructed the record on appellate review with the result it is somewhat more confusing than it would have been if they had been in the case throughout its inception. In this connection it is interesting to note the defendant was represented by Terrance J. Muth, of Wichita, at his preliminary hearing; by Richard L. Hilton, of Wichita, at the trial court level; and on appellate review by Marvin Appling, of Wichita, who, upon his withdrawal from the case, was succeeded by Eugene L. Pirtle, of Wichita, defendant's present court-appointed counsel. And it should be noted that A. J. Focht, of Wichita, who represented the state on appeal, succeeded William J. Tomlinson, of

Wichita, who represented the state at all stages of the proceedings in the court below.

It may be stated that all attorneys mentioned are competent and qualified and that they diligently represented their respective clients during the time they participated as counsel in the case at bar.

A proper understanding of the confusing and somewhat complicated factual situation disclosed by the record can best be achieved by quoting the statements of fact as made by the respective parties.

Defendant's statement, as set forth in his brief, reads:

"Acting upon reports and two or three calls from motels in the city of Wichita that an individual was representing himself as an agent of a construction company and was seeking advancement of money from the motel clerks, Wichita City Detectives Overman and Shackleford arrested the Defendant without a warrant at the Napa Motel. The Defendant was taken to the Wichita City Jail in Lt. Overman's car followed by Detectives Burrows and Hamlin in another police car.

"Detectives Burrows and Hamlin interrogated the Defendant at the city jail and conducted a search of the Defendant's person at that time on July 25, 1963, in one of the interrogation rooms.

"A warrant was thereafter issued and the Defendant was transported by the Marshal of the Court of Common Pleas to the Sedgwick County Jail. Defendant was charged with forgery and uttering under Case No. CR324 in violation of Sections 21-608, 21-628 of the General Statutes of Kansas, 1949. He was charged with obtaining money by use of false representations in violation of Section 21-551, 1949, General Statutes of Kansas, under Case No. CR323. On September 16, 1963, Defendant waived preliminary hearing through a court-appointed attorney in the Court of Common Pleas. A trial before a jury was commenced on December 10, 1963, and the jury found the Defendant guilty on all three counts on December 11, 1963. The Defendant filed his motion for a new trial on December 16, 1963, which was heard on December 20, 1963, and by the court overruled. The Defendant filed his notice of appeal from the court's ruling on a motion for a new trial and the judgment and sentence, pro se, forma pauperis. The trial judge overruled the pro se motion for appointment of appellate counsel on February 17, 1964. Pursuant to the direction of this court the trial judge appointed Marvin R. Appling to represent the Defendant on September 24, 1964. This attorney succeeded Mr. Appling upon his withdrawal."

The state's statement, although lengthy, accurately reflects the facts of record required to dispose of most of the questions raised by the defendant as grounds for reversal of his judgment and sentence. Therefore such statement, which is necessarily limited to the state's own testimony because no evidence was presented by the defendant in his defense, will be quoted verbatim. It reads:

"The uncontroverted evidence in this case shows the following to be the facts:

"That on July 23, 1963, in the City of Wichita, Sedgwick County, Kansas, at a motel known as the Highway Inn, an employee who had been working for the Highway Inn Motel for only one week, saw in the course of her business as an employee the Appellant, Dick Malone, alias Stanley Hooker. He came to her place of business and represented himself as the head engineer of the Tobin Construction Company, coming in advance of his crew of workers. He told Miss Kelly that he needed to find rooms for his men who were coming in trucks, and that he would need advance cash to feed them. He took a reservation for himself, which he did not pay for, and requested of and received from Nedra Kelly an advancement of five twenty-dollar bills or one hundred dollars. He filled out a registration card and received a key to room number 12 in the Motel Unit from Miss Kelly. Miss Kelly, being a new employee, tried to find someone in a responsible position to okay the advance of money to the Appellant who was representing himself as the head of a large construction crew. Failing to find someone to okay the transaction, she relied on her past knowledge of having seen it done in the past, and advanced the money on that basis. The next morning, July 24, 1963, Miss Kelly became quite upset as a result of her cash drawer being $100.00 short, which was the amount she had advanced to the Appellant. One of her superiors, Margerite Fisher, checked the Room No. 12 which had been rented to the Appellant and found that it had not been occupied. At the early morning hour of 1:15 A. M. on July 25, 1963, the Appellant, Dick Malone, with another man identified as Bud Adams, came to the location of the Fireside Motel located in Wichita, Sedgwick County, Kansas. That time they talked to the owner and operator of the motel, Alvin Whitney. The appellant again represented himself as being with Tobin Construction Company and needing to put up truck drivers and their families which would be arriving later. At that particular time the Fireside Motel had only one available unit which the Appellant agreed to take, stating he could use the room for his boss and his family. The appellant alleged that he would have to feed the other men and their families and put them up for the night somewhere and that he would need some money to do this. The owner, Alvin Whitney, agreed to accept a check which was drawn on the Kansas City National Bank, Kansas City, Missouri, for $145.00 and signed by the Appellant as 'Dick Malone.' The keys to Unit 9 were given to the Appellant and he signed the register saying he would settle for the room later. That same morning after Mr. Whitney got to thinking about the matter while he was in bed at approximately 9:00 A. M., he decided that he had better do some checking on the Universal Check given to him by the Appellant. He picked up his telephone and called for the Kansas City National Bank at Kansas City, Missouri, and was unable to get in touch with such a bank. The room which had been rented for the boss of the Appellant, Mr. Tobin, was unoccupied and Mr. Tobin did not appear at the motel. The check given to the Fireside Motel was not honored. Mr. Whitney never endorsed the check nor did he deposit it in the bank after he discussed the matter with his banker at the Stockyards National Bank. Approximately 12 hours later, the Appellant was arrested by Detective

Lieutenant William Overman and Detective Bill Shackelford at the Napa Motel in Wichita, Sedgwick County, Kansas, from there he was taken to the Sedgwick County Jail where he was interviewed by Detectives Bill Burrows and Stan Hamlin. The arrest of the Appellant came about as a result of information received by the Wichita Police Department that a man using the name of Dick Malone, had gone into a motel and represented himself to be an agent of the Tobin Construction Company with the idea of getting a room for a crew of eight or nine men and while so representing himself, asking for an advancement of money so that he could feed and house these men. This report had been investigated and it had been determined by the Police Department that there was in truth and in fact no such representative of this company in town.

"A complaint was received from the Highway Inn prior to the arrest of the Appellant. Following his arrest, he was taken to the Wichita Police Department where Detectives Stan Hamlin and Bill Burrows informed the Appellant that they were police detectives and that as a citizen the Appellant had certain rights. He did not have to tell the officers anything, that anything he did tell them either verbally or in writing, could be used against him in a court of law. He was informed that he had a right to make a telephone call to secure the services of an attorney, that he was not going to be threatened in any way nor was he going to be promised anything. He was asked if he understood these rights and he replied yes.

"Following this advising the defendant of his constitutional rights, an interview was conducted in which the Appellant admitted that he had served time in the penitentiary for several things, including checks. The Appellant claimed to have no recollection of having ever been to the Highway Inn Motel, and contended that he had never represented himself as a representative of a construction company. He did show to the officers a slip of paper from the employment agency sending him to the Tobin Construction Company for a job. He said he had worked for them for one day as a heavy equipment operator. Upon checking his personal property it was discovered that he had in his pockets three motel keys; one for the Highway Inn; one for a motel known as the Trail; and one for the Fireside Motel. Upon being confronted with the keys, the Appellant said that he had rooms in all three of the motels. He disclaimed any knowledge of having had written any checks, however, he admitted having been at the Highway Inn Motel. He stated he could not find a room at said hotel and said he had been drinking at different times and had been taking pep pills or drugs to get a hopped up feeling, and that he had not written any checks that he knew of unless he had written them within the last twenty-four hours. He said he simply did not remember; that he could have conned these people out of their money. That same day, July 25, 1963, a complaint was signed against the Appellant in the Court of Common Pleas of Sedgwick County, Kansas, charging him with Forgery, Uttering and Cheat and Defraud.

"The defendant was arraigned the next day, July 26, 1963, and bond set at a total of $15,000.00 for the three charges. On September 16, 1963, the defendant waived his preliminary hearing in the Court of Common Pleas and was bound over for trial at the next term of the District Court of Sedgwick

County, Kansas. Information was duly filed against the Appellant and he was arraigned in Division 7 of the District Court of Sedgwick County, Kansas, on November 6, 1963. At that time the attorney for the State of Kansas, William J. Tomlinson, informed the defendant and his court appointed attorney that the State would seek imposition of sentence under the Habitual Criminal Law. The next day, November 7, 1963, the morning paper, the Wichita Eagle, carried a story on the Appellant's arraignment.

"A trial before a jury was commenced on December 10, 1963, and the facts as related herein were generally testified to. The State introduced the hotel key to the Highway Inn Motel which had been taken from the Appellant, and which Exhibit was admitted without objection as well as the Registration Card filled out by the Appellant. The jury after duly deliberating the matter, found the defendant guilty of all three counts on December 11, 1963. A motion for new trial was duly filed in time and was argued to the court and by the court overruled. A notice of appeal was filed, counsel appointed for the handling of said appeal, and the matter is now in front of this court as a result of those proceedings."

The questions involved, as stated and argued in defendant's brief, are substantially the same as the errors assigned in his specifications of error. Omitting repetitious statements such specifications charge that the trial court erred:

"1 . . . in allowing the jury to be subjected to undue influence amounting to denial of due process.

"2 . . . in allowing improper conduct of the prosecuting attorney resulting in prejudice to the defendant.

"3 . . . in improperly admitting evidence of prior convictions obtained by interrogation following improper search and seizure and without the constitutional guarantee of counsel.

"4 . . . in admitting evidence obtained from improper search and seizure in violation of due process and resulting in compulsory self-incrimination.

"5 . . . in overruling Defendant's motion for a discharge.

"6 . . . in overruling Defendant's motion for a mistrial.

"7 . . . in overruling Defendant's motion for a new trial.

"8 . . . in overruling Defendant's motion for appointment of appellate counsel.

"9 . . . in its judgment and sentence."

Hereafter claims of error will be identified by number, as they appear in the quoted specifications of error, and questions raised with respect to each such claim will be disposed of accordingly.

Specifications of error 3, 4, 5 and 6. With respect to these specifications a careful review or the record discloses that they were not presented or argued to the trial court at the time of its hearing on the motion for a new trial. In that situation it is the long standing rule of this jurisdiction that in a criminal action alleged trial

errors not heard nor presented at the hearing on the motion for a new trial are unavailable on appeal. For a recent decision where the rule is considered, discussed and applied, see *State v. Burnett,* 189 Kan. 31, 367 P. 2d 67, to which we adhere, where it is said and held:

"While a defendant may appeal to this court as a matter of right from any judgment against him by complying with the adequate and easily complied-with method of appeal (G. S. 1949, 62-1701, 62-1724), the statute does not contemplate that he is entitled to a review of every matter involved in his trial and sentence without complying with well-established rules of procedure relating to appellate review. (*State v. Hamilton,* 185 Kan. 101, 103, 340 P. 2d 390 [cert. den. 361 U. S. 920, 4 L. Ed. 2d 188, 80 Ct. 265]; *Brown v. Allen,* 344 U. S. 443, 97 L. Ed. 469, 503, 73 Ct. 397.) And so here. The defendant appealed from the order overruling his motion for a new trial and the subjects embraced in the specifications of error were fairly within the purview of the grounds of that motion, but he failed to urge and rely upon those grounds for the allowance of his motion for a new trial at the time it was presented to the district court, consequently, they are of no avail to him for appellate review. (*State v. Morrow,* supra; *State v. Hayes,* supra; *State v. Toelkes,* supra.)" (p. 33.)

By reason of his failure to present or urge the foregoing claims of error at the hearing on the motion for a new trial defendant, under our decisions, lost his right to have such claims considered on appellate review. This, we may add, is true even though it is argued by defendant that his rights under the provisions of the Constitution of the United States were violated because of an alleged unlawful search and seizure. See *State v. Aeby,* 191 Kan. 333 (Syl. ¶ 3), 336, 381 P. 2d 356; *State v. Marsh,* 193 Kan. 302, 392 P. 2d 953, cert. den., 380 U. S. 910, 13 L. Ed. 2d 797, 85 S. Ct. 895.

Specification of error 8. Assuming arguendo, as urged in support of this specification, that the district court was in error when it overruled defendant's motion for appointment of appellate counsel, it is neither necessary nor required that we here labor the point. Inasmuch as that court subsequently appointed Marvin Appling as defendant's counsel on appeal, and later, upon his withdrawal from the case, appointed defendant's present counsel, Eugene L. Pirtle, the question whether the court erred, in the first instance, in refusing to appoint counsel has long since become moot and has no place in this lawsuit.

Supplementary facts required to dispose of specifications of error to be presently mentioned may be stated thus.

On November 6, 1963, the date of defendant's arraignment on the charges herein involved, the state, by and through its attorney, William J. Tomlinson, in open court informed the defendant and his counsel, who were both present, that if the defendant were convicted, the state would ask imposition of sentence under the Habitual Criminal Act. It may be stated, this action is corroborated by the journal entry of judgment as signed by the district judge and approved by counsel repesenting the respective parties at the trial court level.

On the next day, November 7, 1963, an article appeared in the Wichita *Eagle*. Portions of that article read:

JURY TRIAL ON FORGERY
SET FOR MAN

"A jury trial for a 52-year old Kansas City man . . . has been set for Dec. 3 on charges of forgery and cheat and defraud.

"District Court Judge Tom Raum Wednesday appointed Richard Hilton to represent the defendant, Dick A. Malone, and set the trial for Dec. 3.

"Malone, alias Stanley R. Hooker, will remain in custody. . . .

• • • • • • • • • •

"In one count Malone was accused of forging and uttering a check for $145 drawn on a ficticious Kansas City bank at a local motel. In the other count he was accused of making false statements and representations to a Wichitan to obtain $100.

"Authorities said Malone served 13 years on a murder count at Alcatraz and three years in federal prison at Chillicothe, Ohio, on auto theft."

On Tuesday, December 10, 1963, during the course of defendant's trial, an article appeared in the Wichita *Beacon*. Pertinent portions of that article read:

"JURY PICKED FOR TRIAL ON FORGERY"

"Jurors were selected in District Court Tuesday for the trial of Dick Malone, 46, alias Stanley Hooker, who has served 13 years in Alcatraz for murder.

"Malone is charged with two counts of fraud and forgery.

• • • • • • • • • • • •

"Malone is accused of obtaining an advance of $100 from a motel clerk by falsely representing himself as a construction firm supervisor who needed the money to feed a crew of construction workers.

"The second count charges forging a $145 check written on a fictitious bank in Kansas City.

"Other Counts.

"Malone served 13 years at Alcatraz, beginning in 1923, for murder of another man in prison. He was convicted of other counts of smuggling dope in Canada, attempted murder, car theft, cheating, swindling.

"Deputy County Atty. William J. Tomlinson said he would ask the court to sentence Malone under habitual criminal act if he is convicted."

We now turn to specification of error 2. The short answer to this claim of error is that it was neither presented nor argued at the hearing on the motion for a new trial, consequently, under *State v. Burnett,* supra, and the other decisions therein cited, it presents nothing upon which reversible error can be predicated on appeal. Even so we have carefully reviewed the record, just above quoted, and are convinced it falls far short of establishing the defendant's unwarranted assumptions that (1) the trial court erred in allowing improper conduct on the part of the state's attorney or (2) that such official made the statement attributed to him by the reporter in the heretofore last quoted paragraph of the Wichita *Beacon* article. To hold otherwise would result in a conclusion based entirely on speculation and conjecture. For all we know, and for all the record shows, the *Beacon* reporter in attributing such statement to the Deputy County Attorney may have been referring to the statement properly made by that official at the time defendant was arraigned in open court on November 6, 1963. Long ago in *State v. Durein,* 70 Kan. 1, 78 Pac. 152, this court committed itself to the rule that in a criminal appeal the record of the proceedings in the trial court will not be interpreted to show error if it be susceptible of a reasonable interpretation to the contrary.

For other decisions of like import see *State v. Smith,* 171 Kan. 722, 237 P. 2d 388; *State v. Trams,* 189 Kan. 393, 369 P. 2d 223; *State v. Ralph,* 194 Kan. 356, 399 P. 2d 548.

Although arguing his foregoing claims of error with vigor counsel for defendant in oral argument of the cause before this court concedes, with commendable candor, that his specification of error 1 presents the crux of this appeal. This contention requires further amplification of the facts of record.

The Wichita *Beacon* article, to which we have heretofore referred, was published on the date indicated which happened to be the very day on which the state concluded presentation of its evidence and the defendant, without adducing any evidence, rested his case. Thereupon the court instructed the jury as follows:

"The jury will be asked to return tomorrow morning to be ready to proceed at ten o'clock to receive the instructions of the Court and the argument of counsel. Remember again that you may not discuss the case among yourselves; not with family, friends, nor strangers. Keep your thoughts within your own minds as individuals until tomorrow when you arrive in the jury room to proceed with your deliberations. . . ."

On the morning of December 11, 1963, the then counsel for

defendant, outside the presence of the jury, called the court's attention to the *Beacon* article and moved the court to poll the jury as to whether any member of the jury had read it. To this request the court responded:

"The article does seem to have gone rather far. However, there is no procedure for polling the jury and nothing would be gained doing that. The procedure would be to advise the jury to disregard the article if they did read it and proceed from there. Therefore, the motion to poll the jury is overruled."

The defendant's counsel then requested the court to declare a mistrial due to the facts. The court overruled this motion stating, in substance, that it involved subject matter that could be raised on a motion for a new trial.

Thereupon the court called in the jury and proceeded to read its written instructions to that body. After doing so it gave the jury the following oral instructions:

"The Instructions have been reduced to writing and have been read to the jury and will be handed to the jury prior to their deliberations. In addition, we would like to give the jury one additional caution. Last night there appeared in the local newspaper an article concerning this case and concerning the defendant involved in this case. It now seems that some of the Information in the article was false and some of it should not have been printed while the case was in trial. It is therefor important the jurors—if you read the article or if you heard anything about it on television or radio—disregard anything that was printed or anything that was said. The case is to be decided by you only on what was presented in the courtroom and not by what was presented or said by anyone outside of the courtroom. This caution is necessary for the purpose of protecting the rights of persons who have been charged and who are on trial as a result of having been charged with public offenses."

The jury then returned to the jury room to consider its verdicts and in a short time returned verdicts finding defendant guilty on each of the three counts.

Following the return of the verdicts defendant filed a motion for a new trial wherein he raised the error assigned under specification 1. After a full and complete hearing, at which time no attempt was made to produce evidence that any juror had been prejudiced or his verdict influenced by the *Beacon* article, the trial court in overruling the motion for a new trial made the following statement:

"The only question here is whether that which was published in the newspaper prejudiced the individual's right to a fair trial and contributed to the verdicts rendered by the jury. I think it should be recorded that after the

jury was dismissed from the case and the record was closed that the Court inquired of the jurors while they were still in the box whether any of them had read the newspaper article referred to. All but one said they hadn't and he happened to be the foreman of the jury. When the Court inquired of him as to whether the reading of the article influenced the verdicts rendered in the case he said, 'Absolutely not.' In fact, he said he couldn't believe he could recall what the article had reported. Therefore, the Court concluded at that time and must conclude now, the jury was not influenced in this case in the rendering of their verdicts by the article that was published in the newspaper. Motion for new trial is overruled."

On the point now under consideration defendant insists the court erred in refusing to grant a new trial on account of the Wichita *Beacon* article of December 10, 1963. In view of the facts, conditions and circumstances, as heretofore related, we are forced to disagree. At the outset it may be conceded that we know of, and are cited to, no controlling case in this jurisdiction. Touching on the subject is *State v. Holmes,* 191 Kan. 126, 379 P. 2d 304, where it is said:

"Another alleged error concerns the alleged prejudicial effect of a news story and picture appearing in a local newspaper during the progress of the trial. It does not appear this matter was raised at the hearing on the motion for a new trial, *and, in any event, no prejudice has been made to appear."* (p. 128.) (Emphasis supplied.)

Here the defendant failed to make any prejudice appear. Actually the record presented shows that the only juror who had read the article said he could not recall what it had reported and when asked by the court if the article had influenced his verdicts he replied "Absolutely not."

Resort to cases from foreign jurisdictions disclose a well-reasoned decision which deals with a question identical with the one now before us, under facts, conditions and circumstances so similar that we are convinced it should be regarded as a controlling precedent— and we so hold. See *United States v. Carruthers,* 152 F. 2d 512, cert. den. 327 U. S. 787, 90 L. Ed. 1014, 66 S. Ct. 805, reh. den. 327 U. S. 817, 819, 90 L. Ed. 1040, 1041, 66 S. Ct. 816, 897, where it is said and held:

"Under this point appellant seriously urges that it was reversible error for the Court to refuse to declare a mistrial on account of an article appearing in the Chicago Daily News after the close of the evidence in the case which article concededly referred to appellant. The hearing of evidence was con- cluded on a Friday afternoon and the jury were permitted to separate and go to their homes. During that evening the article set forth in footnote 6 appeared in the News and was given wide circulation. When Court next

convened on Monday morning counsel for Carruthers presented his motion to withdraw a juror and for a mistrial alleging that the article was probably read by the jurors and was highly prejudicial. The court at the request of appellant thereupon asked the jurors collectively whether any had read the article. Juror Vincent answered: 'I might have. I don't remember it unless I saw it again.' The Court then said to the jury: 'If you have, I told you when you were being selected that the only evidence that you would consider would take place in this court room and which was admissible and was ruled on by the Court. If any of you have read anything concerning this case, and if any of you have read anything, or of any of the defendants, that you did not hear in the court room by sworn testimony or documents you are to entirely disregard it, or anything that might have appeared before you get this case for your deliberation.' . . .

. . . . . . . . . . . . . . .

"All other eleven jurors answered that they had not read the article. The Court thereupon denied the motion and following the closing arguments again admonished the jury that they were permitted to consider only the evidence as presented in open court and were not to consider or be influenced by any article which might have appeared in any newspaper or other publication. . . .

"It cannot be denied but that the newspaper article in question was inflammatory and prejudicial in character and its publication prior to verdict, improper and unethical. Its publication could, under some circumstances have brought to naught a long, tedious and expensive trial. Whether the Court should have in this instance declared a mistrial depends upon all the circumstances. A motion of this character is addressed to the sound discretion of the trial court, (citing cases), and the burden is upon appellant to show an abuse of discretion and prejudice to him, (citing cases). If juror Vincent read the article at all, he could not remember its contents. He said that he read it—that he probably read the article—because he read the Chicago Daily News. . . . The Court explained this to the jury in a manner eminently fair to appellant. . . . We can only assume that the jury answered the trial court's inquiries truthfully, and, so assuming, we find that no juror except Vincent read the article and that Vincent's mind was in no way affected by what he had seen or read. Under such circumstances we think appellant has failed to show prejudice resulting to him from the publication of the article and we hold that there was no abuse of discretion on the part of the trial court in the denial of his motion." (pp. 518, 519.)

Defendant's specifications 7 and 9 relate to subjects previously discussed in this opinion and require no further attention.

In conclusion it should be stated we have now carefully reviewed and considered every reasonable question advanced by defendant in his brief and find no sound ground for reversal of his judgment and sentence.

The judgment is affirmed.