No. 44,849

STATE OF KANSAS, *Appellee*, v. ROBERT SHERMAN OSWALD, *Appellant*.

(417 P. 2d 261)

Opinion filed July 14, 1966.

*Stephen B. Millin*, of Kansas City, Missouri, argued the cause, and *Ernest McRae*, of Wichita, was with him on the brief for the appellant.

*A. J. Focht*, Deputy County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a direct appeal in a criminal action. Robert Sherman Oswald was tried, convicted and sentenced for larceny of tires. He was sentenced to confinement for a period of fifteen years in accordance with K. S. A. 21-534 and 21-107a as an habitual criminal. Appellant here complains of various trial errors and of insufficiency of the evidence.

The facts and circumstances of this case are summarized from the evidence in the record as follows:

The defendant lived in St. Louis, Missouri, and owned and operated a tow truck. He learned of certain tires which were accessible in Wichita. After picking up a friend, Glenda Duisen, and a rented trailer, he left St. Louis. He arrived in Wichita around 11:00 p. m. on February 15th, 1965. He loaded thirty-five tires into the rental trailer. Because of mechanical trouble with his truck, he was delayed until the following evening and then left for St. Louis. Defendant was stopped by officer Wilson of the Jackson county, Missouri, sheriff's patrol on highway 40 because of his speed and tail lights. An examination of the trailer disclosed the tires. An examination of the tow truck disclosed a .38 revolver in the glove compartment. A traffic ticket was issued to defendant for careless driving and he was put under arrest for investigation of burglary. Defendant was taken to patrol headquarters in Jackson county, Missouri, and he gave a written statement indicating the source of the tires was in Wichita, Kansas. He stated that he obtained the tires from a Sinclair service station in Wichita. The thirty-five tires in the towed trailer were taken into custody by the Jackson county sheriff's office. They were inventoried and certain identifying marks were noted in addition to the tire sizes and trade name. All tires were new Goodyear tires. Two of the tires had "Goodyear Service Store, 336 S. Main, Wichita, Kansas" stamped on the tire wrappings. Eight of the tires had "change over" numbers stamped on them which numbers were used by the Goodyear store to indicate that owners of new vehicles had exchanged these unused tires for those of different size or grade. Two of the tires had "Huston Tire, Hays, Kansas" written on them. There was evidence that these latter tires were part of a shipment of a total of twenty such tires inventoried at the Goodyear store the first of February.

In response to inquiry by the Jackson county sheriff's office the officials in Wichita checked out defendant's story and found that the tires had not been taken from any Sinclair service station; and they learned on investigation that the inventory of tires in the Goodyear store in Wichita was short approximately seventy tires.

Captain Overman of the Wichita police went to Missouri and brought back four of the tires taken from defendant's rented trailer. These had been held in custody by the Jackson county sheriff's office. He also returned the defendant to Wichita for trial. The

other thirty-one tires were shipped by the sheriff's office in Missouri to the manager of the Goodyear store in Wichita. The manager testified that there was no evidence that the locks had been broken or forced on their warehouse where the tires were stored. There was nothing apparent to indicate how entrance had been gained, or how the tires were removed. The company sales records indicated these tires had not been sold to anyone. The manager of the Goodyear store testified the thirty-five tires belonged to Goodyear. However, he could not identify each tire separately.

There was some evidence, and several statements made by both counsel during the trial, from which the jury might infer that Arthur McKenna, Jr. was also involved in the larceny of the tires as an accomplice. The defendant urges that it was the theory and proof of the state that McKenna was the thief and therefore the defendant cannot be legally convicted of the crime.

The information filed against defendant specifically charges the defendant with stealing the tires. We fail to see how reference to McKenna in the trial of this case could have materially prejudiced the defendant, for its effect would seem to cast some doubt in the minds of the jury as to the guilt of defendant and might have resulted in a reasonable doubt as to his guilt. The defendant was charged with larceny of tires. The references to McKenna did not change the theory of the case set forth in the information. In any event the defendant failed to include this specification in his grounds for new trial.

This court stated in *State v. Freeman*, 195 Kan. 561, 570, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981.

"The rule in this jurisdiction is that in a criminal case specifications of error not included in the grounds of the motion for new trial, and thus brought to the attention of the trial court, cannot be considered on appeal. (*State v. Trams*, 189 Kan. 393, 369 P. 2d 223, and cases therein cited.) Moreover, alleged trial errors not heard nor presented at the hearing on the motion for new trial are unavailing on appeal from a conviction. (*State v. Malone*, 194 Kan. 563, 400 P. 2d 712.)"

Defendant contends that the evidence was insufficient to identify the tires found in his possession as those missing from the Goodyear store in Wichita. He cites *State v. Ragland*, 170 Kan. 346, 226 P. 2d 251. In this case defendant was charged with burglary and larceny of money. The record there wholly failed to show whether it was $400.00 or $4,000.00 taken. There was no showing of the type of money taken, either cash or currency, and no evi-

dence as to the denomination of any bills. The other evidence to tie defendant to the crime was equally uncertain and indefinite and the court held there was no evidence upon which an inference of defendant's guilt could be based. We have examined the other cases cited by defendant and do not find them persuasive.

This court has held that when money claimed to have been stolen is offered in evidence it is not necessary to identify each bill by giving its number, series and denomination. (*State v. Pigg*, 80 Kan. 481, 103 Pac. 121.)

The presence of red hog bristles in defendant's car of the kind and color of those on the hog stolen may be established to prove the identity of the hog sold by defendant and transported in said car. (*State v. McKee*, 131 Kan. 263, 261 Pac. 950.)

Where defendant was charged with larceny of four tires, tubes and rims, evidence of spots of red paint on rims of the same size, kind and make goes to the identification of the stolen property and may be admissible. (*State v. Handler*, 142 Kan. 455, 50 P. 2d 977.)

When the owner of a large quantity of liquor identifies the liquor as that which was stolen from his store, he cannot positively identify each bottle when cross-examined, an objection to the introduction of such liquor into evidence goes merely to the weight and not to the admissibility of the evidence. (*State v. Hendrix*, 188 Kan. 558, 363 P. 2d 522.)

The identity of the thirty-five tires found in the trailer which defendant was pulling behind his tow truck was sufficiently certain to go to the jury. Special identification on individual tires was shown, such as "Goodyear Service Store, 336 S. Main, Wichita, Kansas" printed on tags attached to two of the tires. The name of "Huston Tires, Hays, Kansas" was written on two of the tires. The "change over" numbers appeared on certain of the tires and was generally in use by the Goodyear store. This was evidence admissible to establish identity. When considered along with all other circumstances of this case the evidence was sufficient for the jury to find all thirty-five tires found in defendant's trailer came from the Goodyear store in Wichita.

Defendant argues that there was no evidence to show he stole the tires even though they were found in his trailer. Disregarding for this purpose the direct admission by the defendant contained in his written statement given to detective Kelly, this court has repeatedly held that possession of recently stolen goods when unexplained may be sufficient to uphold a conviction.

In *State v. Grey,* 154 Kan. 442, 119 P. 2d 468, defendant was charged in one count with burglary and larceny. At page 444 of the opinion this court said:

"Under the law of this state, unexplained possession of recently stolen property is prima facie evidence of guilt sufficient to warrant conviction. (*State v. Bell,* 109 Kan. 767, 201 Pac. 1110; *State v. White,* 76 Kan. 654, 92 Pac. 829; *State v. Wood,* 118 Kan. 58, 233 Pac. 1029.)

"In *State v. Rice,* 93 Kan. 589, 144 Pac. 1016, it was held, as stated in the syllabus:

" 'Proof that a burglary was committed and that the stolen goods were shortly thereafter found in the possession of the accused, when considered in connection with all the other facts and circumstances of the case, including his failure satisfactorily to explain such possession, will sustain a conviction of burglary.' "

See also *State v. Dodd,* 156 Kan. 52, 131 P. 2d 725, where defendant was caught with a chicken under each arm before any theft of chickens had been reported to the police.

Defendant next contends that the record fails to show state's exhibits 1, 2, 3 and 4 were introduced in evidence. These exhibits were the only tires brought into court. The record filed in this court fails to show a formal introduction of these specific exhibits into evidence. However, defendant considered them in evidence and claimed error in his motion for a new trial based upon the action of the trial court in "overruling defendant's objections to the admission of state's exhibits 1, 2, 3 and 4." Defendant's counsel while questioning witness Overman asked someone, presumably the court, if these exhibits were in evidence. The record indicated someone, presumably the court, answered in the affirmative. After the last witness had testified for the state, counsel asked if all his exhibits were admitted and the court, after checking, said he thought so.

This court has said when an exhibit has been before the court and jury, subject to their inspection for all purposes of the trial the objection cannot prevail on appeal. (*State v. Bowman,* 80 Kan. 473, 103 Pac 84.) Such an oversight occurring either in the trial of this case or in preparing the record on appeal would be a technical error or defect mentioned in K. S. A. 62-1718, which reads:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

Defendant next contends that he was denied the right to present the testimony of Arthur McKenna, Jr. on his motion for new

trial and that such testimony would have established his right to a new trial. McKenna was assistant manager of the Goodyear Service Store at the time the larceny occurred. The record shows that the first subpoena was issued for McKenna at the request of the state before the preliminary hearing. It was returned by the sheriff of Sedgwick county showing McKenna was not found in that county on March 12, 1965. A second subpoena was issued for McKenna at the request of the state before the trial, and it was returned on May 27, 1965, with a notation "moved to Junction City." No effort was made by defendant to secure his presence at the trial. The trial began June 2, 1965, and concluded on June 8, 1965. Defendant presented no evidence during the trial. On his motion for new trial defendant contended that McKenna's testimony would clear him of any crime. At the hearing on the motion for new trial McKenna was present with his attorney. Defendant had previously secured his presence by subpoena directed to Junction City, Kansas. When McKenna was asked to take the stand his attorney objected for the reason it might tend to incriminate him and he claimed protection under the Fifth Amendment. Further objection was made that no foundation had been laid since no subpoena had been issued before or during the trial to get the man's testimony. The state joined in the latter objection. The defendant's evidence to establish the nature of the newly discovered evidence and the inability to produce the same at time of trial was wholly insufficient to justify a new trial. The testimony sought from McKenna concerned certain dealings which defendant had with McKenna. Such evidence was known to defendant at the time of the trial because of its very nature. It concerned actions in which defendant participated. The evidence conclusively showed that defendant's wife made a long distance call and talked to Mr. McKenna in Junction City on the opening day of the trial. When a subpoena was issued at the request of defendant it secured his immediate presence.

When the facts are fully within the knowledge of the party at the time of trial it cannot later be denominated newly discovered evidence and used as a basis for obtaining a new trial. It is not newly discovered evidence. (*State v. Currens,* 46 Kan. 750, 27 Pac. 140; *State v. Cardwell,* 90 Kan. 606, 135 Pac. 597; *State v. Fry,* 131 Kan. 277, 291 Pac. 782.)

This court said in *State v. Leigh,* 166 Kan. 104, 112, 199 P. 2d 504:

"The granting or denial of a motion for new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court. It must first be shown to that court's satisfaction that such evidence could not with reasonable diligence have been produced at the trial . . ."

In *Carson, Pirie, Scott & Co. v. C. M. Henderson & Co.,* 34 Kan. 404, 8 Pac. 727, this court, at page 406, said:

"Assuming that this testimony came to the knowledge of the plaintiffs since the former trial, that it is material, and that it is not cumulative, it does not necessarily follow that they are entitled to a new trial. It has been repeatedly held by this and other courts that before a new trial will be granted upon the ground of newly-discovered evidence, it must affirmatively appear that it was through no want of diligence on the part of those applying for the new trial that the evidence was not earlier discovered and produced at the trial."

(*State v. Nimerick,* 74 Kan. 658, 87 Pac. 722; *State v. Chaplain,* 101 Kan. 413, 166 Pac. 238; *State v. Cooper,* 190 Kan. 101, 372 P. 2d 289.)

Defendant objects to certain instructions given by the trial court. Instruction No. 2 contained the following sentence:

"It is incumbent upon the prosecution, before conviction can be had, to prove to your satisfaction, beyond a reasonable doubt, that the crime alleged in the information has been committed in Sedgwick County, Kansas, and that it was committed by the defendant in the manner and form alleged, within two years next preceding the commencement of this action which was commenced on March 22, 1965."

Defendant specifically objects for the reason that the date of the alleged commission of the crime is not pinpointed in the instruction as occurring "on or about February 15, 1965."

This court in *State v. McKee,* 131 Kan. 263, 266, 291 Pac. 950, said:

"It is a well-established principle of law in this state that the exact time of the commission of an offense need not be proved so long as the prosecution is not barred by a statute of limitations."

The date of the offense was pinpointed by defendant's statement given to the Jackson county sheriff's office as having occurred on the exact date alleged in the information. The authorities cited by defendant on this point are not helpful or persuasive. When considered along with the other instructions we find nothing approaching reversible error in this instruction. We fail to see how prejudice might result to defendant.

After the case had been submitted and the jury had begun deliberations the jury submitted a written question to the court and the court replied in writing as follows:

"JURORS' QUESTION No. 1.

"Grand Larceny what constitutes. Must it be proven that the man actually took the goods from the designated location as charged by the State or can mere possetion (sic) of goods as charged be considered as Grand Larceny.

"THE COURT'S ANSWER.

"Please read carefully instructions number 2, number 3, and number 10."

The original instructions referred to by the court are as follows:

"No. 2.

"The fact that an information has been filed against the defendant in this case charging the defendant with a particular crime is not of itself, and is not to be considered by you, as constituting any evidence of the defendant's guilt of the crime charged.

"The information is merely an instrument by which the prosecution brings the defendant before the Court and Jury for trial upon the charge alleged in the information.

"It is incumbent upon the prosecution, before conviction can be had, to prove to your satisfaction, beyond a reasonable doubt, that the crime alleged in the information has been committed in Sedgwick County, Kansas, and that it was committed by the defendant in the manner and form alleged, within two years next preceding the commencement of this action which was commenced on March 22, 1965.

"No. 3.

"Section 21-533 of the General Statutes of Kansas, provides in part as follows:

" 'Every person who shall be convicted of feloniously stealing, taking or carrying away, any money, goods, . . . or other personal property or valuable thing whatsoever, of the value of Fifty Dollars or more, . . . belonging to another, shall be deemed guilty of Grand Larceny.'

"No. 10.

"The unexplained possession of recently stolen property, when taken in connection with other criminating circumstances, may raise a presumption sufficient to warrant conviction of larceny. But the mere possession of recently stolen property without any other facts indicative of guilt, is not prima facie evidence that the possessor is guilty of larceny.

"However, such possession, to warrant a conviction by reason thereof, must have been so soon after the time of the commission of the larceny as to render it morally certain that such possession could not have changed hands since the commission of such larceny.

"The question of whether the defendant has possession of recently stolen property and whether the property was stolen by the defendant are also questions for the Jury to determine from all the evidence admitted in the trial."

A careful reading of these three original instructions discloses nothing of an objectionable, coercive or prejudicial nature. The court quite properly referred to several general instructions previously given and bearing on the question submitted by the jury.

In the case of *State v. Wilson,* 169 Kan. 659, 663, 220 P. 2d 121, this court said:

". . . it very frequently happens that during the course of a trial a jury will request additional instruction on some particularly bothersome point, and under such circumstances we cannot say as a matter of law that it is error for the court to give such further instruction, provided, of course, the instruction so given is not coercive or otherwise objectionable. Guided by that principle, we cannot say that under the circumstances here presented the giving of the additional instruction was in itself erroneous or in any way prejudicial, notwithstanding counsel's complaint that he did not have the opportunity for further argument to the jury. In other words, it has not been made to appear that the rights of the defendant were in any way prejudiced by the action of the trial court in giving the instruction."

K. S. A. 62-1447 provides:

"The judge must charge the jury in writing and the charge shall be filed among the papers of the cause. In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict. If he presents the facts of the case, he must inform the jury that they are the exclusive judges of all questions of fact."

The instructions referred to by the court had been previously submitted in writing to the jury. The written answer did not constitute an independent statement of a rule of law. It was neither coercive nor made to influence the jury adversely.

This court in *State v. Potter,* 15 Kan. 302, 320, stated:

"Where a juror propounds a question to the court, it may make a direct answer without reducing the same to writing, provided in so doing it does not make an independent statement of a rule of law. In other words, where the question of the juror is the full statement of the rule, and the answer is no more than an affirmation or denial, such affirmation or denial need not be reduced to writing before it is given. It may be remarked in reference to these propositions, and especially the last, that the purpose of this statute is to secure to the defendant the exact rulings of the court, in order that he may avail himself of any error in those rulings; that it was not intended to cast any unnecessary burdens upon the court, or to hamper and restrict communications between the court and jury; that it should be so construed as fairly to secure that purpose, and not made a mere weapon of technical error; . . ."

(See also *State v. Howland,* 157 Kan. 11, 14, 138 P. 2d 424; *State v. Myers,* 173 Kan. 253, 245 P. 2d 1200.)

We have examined the cases cited by appellant where this court has laid down the rule that instructions to a jury must be considered as a whole. We feel that they correctly state the law. They are not applicable to this case for the court here merely

acted in response to a question by the jury and referred them to three previously given instructions bearing upon the question posed. We find no error in this.

The defendant objects to an additional instruction given by the court after the main charge and when the jury had returned to the court, apparently for further instructions. The instruction given reads as follows:

"This case has been tried by both sides, and at considerable expense, and both sides have submitted for your consideration all of the evidence that they have with respect to the issues involved therein, and the matter has been submitted to you for decision and verdict. Although under the law a verdict must be unanimous, and should be based upon your honest judgment, not mere acquiescence for the sake of expediency, it is still necessary that you examine the matters submitted to you with the proper regard for, and deference to, the opinions of each other. There is no reason to believe that a jury better qualified than you would hereafter be chosen to try this case. There is no reason to believe that any subsequent jury would be in any better position to decide the issues of fact which have been submitted to you. Therefore, each of you should listen to the arguments of the other with an openmindedness characteristic of a disposition to be convinced by them; and if you differ in your views of the evidence, you should all be led by such difference of opinion to scrutinize the evidence more closely and to re-examine more carefully the grounds of your opinion.

"Above all, it is the duty of the jury to keep in mind that the jury room is no place for espousing and maintaining, in the spirit of controversy, either side of a cause. The end that the jury must keep in view is the truth as it appears from the evidence submitted to it, which must be considered with the instructions of the Court.

"The jury will continue with its deliberations in the spirit of fairness and candor and try to arrive at a verdict."

This court has considered instructions of similar import given under similar circumstances and has held that they are not coercive or violative of the jurors' independent will and judgment. If such instruction is given without desire to invade the province of the jury or to coerce the jury no error can be predicated thereon. (*State v. Rogers*, 56 Kan. 362, 43 Pac. 256; *State v. Garrett*, 57 Kan. 132, 45 Pac. 93; *State v. Young*, 109 Kan. 526, 200 Pac. 285; *State v. Woolworth*, 148 Kan. 180, 81 P. 2d 43.)

Courts of other states have generally expressed a similar view. See 85 A. L. R. 1427 for cases from other jurisdictions. The United States Supreme Court found no error in such an instruction given under similar circumstances by a lower court. See *Allen v. United States*, 164 U. S. 492, 41 L. Ed 528, 17 S. Ct. 154.

We find no error in giving the instruction under the circumstances

disclosed by the record. However, as a word of caution, this instruction quite properly could have been given at the time of the original charge. If so given all question with regard to the coercive effect of the same would be removed. The practice of lecturing a jury in a criminal case after it has reported a failure to agree is not to be commended and under circumstances differing from the present case might well be held coercive and erroneous as invading the province of the jury.

The defendant specifically claims trial error in the admission of certain testimony by Captain Overman of the Wichita police department. The court permitted him to testify over the objection of counsel that after the larceny of tires, Mr. McKenna refused to discuss the case with him. McKenna was assistant manager of the store from which the tires were alleged to have been stolen. The record generally indicates that the defendant attempted to throw suspicion of the crime on McKenna in the cross examination of witnesses for the state. We see nothing approaching reversible error in the record concerning this point. A similar contention was made in the case of *State v. Lopez*, 182 Kan. 46, 318 P. 2d 662, and it was there held that since the evidence was not used to prove the crime but merely to explain the action of the officer, it was properly received.

Defendant next predicates his charge of error upon a failure of the trial court to require Mr. Wilson, of the Jackson county sheriff's patrol, to produce for cross examination a certain investigation report made and turned in to the sheriff's office covering his investigation of the trailer load of tires being towed by defendant together with a further investigation of defendant's passenger on an unrelated criminal matter. The witness testified that he had previously reviewed his notes prior to trial and that these were in possession of officer Kelly of the Jackson county sheriff's patrol who was present in the witness room. On objection by the state the court refused the request of defendant to make use of the same on cross examination.

Although the exact nature of this report is not apparent in the record, it does not appear to be one of public character. It was not used by the witness to refresh his memory while on the witness stand. It contained information of a confidential nature concerning an unrelated crime. To permit its use by the defendant would divulge information concerning other crimes in the process of

investigation, and destroy the effectiveness of the investigative and enforcement processes of the state.

We believe that this was a report similar to the one mentioned in the case of *State v. Hill,* 193 Kan. 512, 518, 394 P. 2d 106, where the court said:

"We do not believe the trial court erred in overruling the defendant's motions to be furnished with a copy of the K. B. I. report containing statements which Nelson may have made about the robbery. The report obviously was one made in the course of investigating the robbery and thus in the pursuance of official duty. A report of such nature is not one of public character even though it be compiled by public officials; it is one designed solely for the use of officers in solving the crime under investigation and in bringing to justice the person or persons responsible for its commission. No doubt, the report in this case contained information of a confidential nature, the disclosure of which might have serious adverse effects on the future course of efficient law enforcement."

Generally the opposing party or counsel has the right, on proper demand, to inspect, and use for purposes of cross examination any paper or memorandum which is used by a witness while on the stand for the purpose of refreshing his memory upon matters as to which he is testifying. (*Railroad Co. v. Hays,* 8 Kan. App. 545, 54 Pac. 322; 125 A. L. R. 192.)

Before the opposing counsel or party is entitled to an inspection of papers used by a witness for the purpose of refreshing his memory, it must appear that the witness is actually using the papers for that purpose. (*Lennon v. United States,* 20 F. 2d 490; *State v. Magers,* 36 Or. 38, 59 Pac. 892; *Williams v. Duluth Street R. Co.,* 169 Wis. 261, 171 N. W. 939; 125 A. L. R. 203.)

The accused has no right to the inspection or disclosure of information in possession of the prosecution which the prosecution designs to use in the prosecution of others. (*State v. Jeffries,* 117 Kan. 742, 232 Pac. 873; *State v. Badders,* 141 Kan. 683, 42 P. 2d 943.)

The granting or refusal of the accused's request for the production or inspection of a writing for purposes of cross examining the witness lies in the discretion of the trial court, and in the absence of an abuse of discretion no error can be predicated thereon. The notes which defendant refers to were not used by the witness while testifying on the witness stand. They were not public records. This court cannot say the defendant was prejudiced by their exclusion by the trial court. No abuse of discretion appears.

We have carefully considered all matters presented by this appellant-defendant and find no prejudicial error.

The judgment of the trial court is affirmed.

FATZER, J., dissenting: I must respectfully dissent from paragraph 3 of the syllabus and the corresponding portion of the opinion dealing with the "additional instruction" after the jury had extended its deliberations into the second day and after the court knew it was deadlocked by an eight to four vote. The additional instruction is similar to the so-called Allen or "dynamite" instruction (*Allen v. United States,* 164 U. S. 492, 41 L. Ed. 528, 17 S. Ct. 154, decided in 1896) designed to blast loose a deadlocked jury. There is small, if any, justification for its use. That case upholds an instruction as a reminder to juries that "they should listen, with a disposition to be convinced, to each other's argument."

My principal concern with the additional instruction is that it is substantially a PIK (10.20, p. 292) instruction and in my judgment it is coercive and has the effect of pressuring a minority of the jurors to sacrifice their conscientious scruples for the sake of reaching a verdict. Particularly is this so with respect to the time when it was given in this case. I used the word "coercive" in the context to mean that the instruction is capable of causing a minority juror to substitute the majority's opinion for his own—not that he is persuaded to reach a different decision, but that he accepts the majority view in spite of his own conviction as to the defendant's guilt or innocence.

The so-called Allen or "dynamite" instruction has come into increasing disfavor with the courts. (See, for example, *Green v. United States,* 309 F. 2d 852; Deadlocked Juries and Dynamite: A critical look at the "Allen Charge," 31. U. Chi. L. Rev. 386; *Jenkins v. United States,* 380 U. S. 445, 14 L. Ed. 2d 957, 85 S. Ct. 1059.)

Moreover, this court in *Eikmeier v. Bennett,* 143 Kan. 888, 896, 57 P. 2d 87, expressly disapproved the charge taken from the original Allen instruction, the court granting reversal because of it. In the opinion Mr. Justice Thiele said:

"The only purpose in giving such an instruction as we have under consideration is to coerce the jury to agree, otherwise there would be no point in giving it. If the trial court felt there would be need to center attention of the entire panel of jurors on the purposes for which it was called, the duties of the individual jurors in consideration of cases in which they might sit, etc., as said in *State v. Hathaway,* supra, it would be better were it done when the entire panel of jurors first assembles. If not then given, for adequate reasons

arising during the trial of a particular action, such an instruction might not be out of place in connection with other instructions given when the cause is submitted to the jury. *But even a very temperate instruction, given after the jury has deliberated for some hours, may very easily concentrate attention on the duty of jurors to agree, to the prejudice of one party.* To say to a minority that they should reexamine their views in the light of the opinion held by the majority, without putting a like duty on the majority respecting the opinion of the minority, is wrong. The minority may be right and the majority wrong. Until the legislature provides for verdicts by a definite majority of the jury, the court, by additional instruction, should not suggest, even faintly, that the opinion of the minority is to be controlled by that of the majority." (l. c. 896.) (Emphasis supplied.)

In the instant case the jury was instructed as a body, and although the doctrine of reasonable doubt is stated in the general instruction, it was addressed to the jury in its collective capacity. Under our system, the verdict must be the concurrent judgment of all the members of the jury. The jury system rests in good part on the assumption that the jurors should deliberate patiently and long, if necessary, and arrive at a verdict—if, but only if, they can do so conscientiously. In *State v. Bybee,* 17 Kan. 462, this court, speaking through Mr. Justice Brewer, stated it was improper for the district court to interfere with the jury by pressuring a minority of the jurors, and said:

"It is not the theory of jury trials, that the individual conclusions of the jurors should be added up, the sum divided by twelve, and the quotient declared the verdict, but that from the testimony each individual juror should be led to the same conclusion; and this unanimous conclusion of twelve different minds, is the certainty of fact sought in the law. Especially is this true in criminal trials. Here should no thought of compromise be tolerated. . . ." (l. c. 467.)

Likewise, in *State v. Witt,* 34 Kan. 488, 8 Pac. 769, Mr. Justice Johnston said:

". . . It is the duty of the juror to consult and consider the views of his fellow-jurors, but utimately he must act upon his individual judgment, and . . . if any one of the jury, after having considered all the evidence, and after having consulted with his fellow-jurymen, should entertain a reasonable doubt of the defendant's guilt, they cannot convict. . . ." (l. c. 496.)

The context of the entire record should be considered in determining a coercive effect. Here, the case was submitted to the jury on June 7, and it deliberated upon its verdict until the hour of adjournment. On June 8, the jury convened and continued its deliberation until the noon hour. At a time not disclosed by the record, but on June 8, when the court knew the jury was dead-

locked eight to four and that it had remained eight to four for about an hour, the court, over the defendant's objection, gave the additional instruction and thereafter, on June 8, at 4:40 p. m., the jury announced it had reached its verdict.

Closely scrutinizing the "additional instruction" I note that the court stated the case had been tried by both sides "at considerable expense;" that there was no reason "to believe that a jury better qualified than you would hereafter be chosen to try this case," and that there was no reason to believe "any subsequent jury would be in any better position to decide the issues of fact which have been submitted to you." In my judgment, reference to the trial being "at considerable expense" and that "a jury better qualified" could not be chosen, refers to matters completely outside the issues and was prejudicial. In *State v. Beacon Publishing Co.*, 142 Kan. 734, 42 P. 2d 960, Mr. Justice Burch, speaking for the court, disapproved an instruction which indicated reference to the taxpayers, which in effect nullified a previous instruction which properly authorized a hung jury under the conditions therein stated. In the opinion it was said:

"The court gave the jury two instructions, which follow:

" 'Both the state and the defendant are entitled to the separate judgment of each juror. It is the duty of each juror to refuse to concur in a verdict of guilty unless and until he is satisfied that each and every fact necessary to establish the guilt of the defendant has been proved by the evidence to his satisfaction beyond a reasonable doubt.

" 'It takes all of the jury to convict or all to acquit. Hung juries are an abomination to any court, an abhorrence to taxpayers and a reproach upon the members thereof.'

"The first instruction is an abbreviation of an instruction to be given in criminal cases which this court has several times approved. The instruction properly authorized a hung jury under the conditions stated. The second instruction nullified the first, because if a juror should do his duty, or a small minority of jurors should do their duty and refuse to concur with the others, their conduct would be an abomination to the court, and abhorrence to the taxpayers and a reproach to themselves. The second instruction was improperly given. (*Neely v. Travelers Ins. Co.*, ante, p. 691.)" (l. c. 744.)

The majority opinion concludes the instruction is not coercive but condemns the giving of it at the time it was given in this case. Be that as it may, the vice of the instruction was the court's interference with the jury's function. No matter when the instruction was given (but particularly in this case after the court was aware the jury was deadlocked and after it had deliberated many hours) it gave the jury false notions of the validity and force of the opinion of the

majority jurors; it tended to limit full and free discussion in the jury room; it prejudiced the rights of the defendant to a hung jury and a mistrial by tending to stifle the dissenting voice of minority jurors. (*Green v. United States,* supra.)

I appreciate the considerations which induced the district court judge to give the additional instruction and fully sympathize with the spirit which controlled him, but, nevertheless, I am of the opinion he passed beyond the line which should limit the counsels and instructions of a court to a jury, and that thereby the material rights of the defendant were prejudiced. I would reverse the judgment.